Foster Chambers
Attorneys' Business Address
City, ST ZIP Code
Phone | Fax
Email

Plaintiff in *pro per*

FILED

NOV 01 2022 

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

| | |
|---|---|
| FOSTER CHAMBERS,<br><br>     Plaintiff,<br><br>vs.<br><br>VILLAGE OF OAK PARK; TAMMY GROSSMAN; KEVIN JACKSON; STACY DEXTER; AND STEVE CUTIA,<br><br>     Defendants. | Case No.: Number<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT**<br><br>**1:22-CV-6008**<br>**Judge Nancy L. Maldonado**<br>**Magistrate Judge Jeffrey T. Gilbert**<br>**Random Assignment** |

NOW COMES Foster Chambers, Plaintiff, and files this Complaint against Village of Oak Park (VOP), Tammy Grossman, Kevin Jackson, Stacy Dexter, and Steve Cutia, Defendants, and for cause would show this Honorable Court as follows:

## INTRODUCTION

1.     Foster Chambers is an Oak Park resident. He found himself at the center of a coordinated campaign of harassment by certain VOP officials.

2.     Defendants issued Plaintiff over 65 tickets in retaliation for asserting certain constitutional rights. These tickets occurred on a near weekly sometimes daily basis since July 2018.

PLAINTIFF'S ORIGINAL COMPLAINT - 1

3.      Plaintiff now faces over $30,000.00 in alleged fines. The VOP has demonstrated no indication that it intends to halt its discriminatory code enforcement against Plaintiff.

4.      Plaintiff brings this action to redress acts of equal protection (Class of One) violations pursuant to 42 USC § 1983 (Count I & II); Denial of Due Process Under the Fourteenth Amendment (Count III) and Indemnification (Count IV).

## JURISDICTION, VENUE, AND PARTIES

5.      The Court has subject matter jurisdiction over this case under 28 USC § 1331 because this action presents federal questions and seeks to redress the deprivation of rights under the First and Fourteenth Amendments to the United States Constitution and pursuant to 42 U.S.C. § 1983.

6.      Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because the events giving rise to the claims took place in the Northern District of Illinois.

## PARTIES

7.      Plaintiff Foster Chambers is a resident of Oak Park, Illinois.

8.      Defendant Steve Cutia ("Cutia") serves as head Building inspector of the VOP and final policy maker.

9.      Defendant Stacy Dexter ("Dexter") serves as Cutia's assistant and seems to be leader of the permit division.

10.     Defendant Village of Oak Park ("VOP") is a municipality incorporated under the State of Illinois laws. It funds both the code enforcement regime and the municipal court system of the Village.

PLAINTIFF'S ORIGINAL COMPLAINT - 2

11.     Defendant Tammie Grossman is a senior municipal official who oversees VOP Building and Permitting divisions.

## FACTUAL ALLEGATIONS

12.     Plaintiff Foster Chambers moved to Oak park in 2017 upon which he started his first project under his Caucasian Wife's name, Heidi Boo.

13.     In 2016, when the highland project was started and paperwork was submitted Plaintiff was told once he had his full permit submitted he could start demo while the permit went through the process.

14.     That highland project is/was guilty of every violation Plaintiff has received to this day yet Plaintiff didn't receive a ticket until 2019.

15.     To be clear the highland project never had a Cook County demo permit, never put up a fence, never got permits for the countless dumpsters Plaintiff had, he routinely went over 90 days between inspections without citation, and Plaintiff had temporary electric poles.

16.     Throughout that entire process, Plaintiff never received a single notice of violation. The design of Plaintiff's highland was never looked at by a special board. It took around 1 week to get approval for that design Permit. The fee was around $3000.

## DEFENDANTS' TARGETED HARASSMENT

17.     Plaintiff submitted permits for 840 Cuyler the same way he had for his previous project.

18.     The same way he started demo previously he started demo this time, and unlike the previous time, the Plaintiff was met by the Defendant Cutia who was very rude and dismissive.

PLAINTIFF'S ORIGINAL COMPLAINT - 3

19.     Defendant Cutia and Plaintiff Foster got into a few heated exchanges based around the fact all of a sudden we were hearing rules that hadn't been in place the previously 18months.

20.     Foster suspected race issues being involved as there was no other reason for this treatment.

21.     Plaintiff received several started work early permits which are 2x permit fee amount which were falsely accused because we didn't start working on the house we started demo, so by law we should have gotten a double fee based on the start demo permit earlier.

22.     Plaintiff was ticketed over 30 times at this specific property of 840 Cuyler, work was disrupted on an almost weekly timeframe with stop work orders for the smallest violations. Were ticketed for every minor violation you can think of from lawn height, fence violations.

23.     Plaintiff received 3 back to back tickets in regards to the fence. Each ticket was taken to court the judge told us what to do and we'd be allowed to work. VOP code states: *"All construction sites shall be fully enclosed with an 8 feet high barrier of chain link fence with closed selvages on top and full-height opaque fabric during all phases of the work unless approved in writing by the building official. Chain link fencing shall have full-height posts driven into or staked to the ground at 8 feet on center maximum along the length of the construction."*

24.     Plaintiff were given tickets one side at a time, the code also states where fences protect entry on adjacent side you don't need fences. Our property was surrounded on both sides by a fence.

25.     Plaintiff should have been given one ticket for a fence, we would have gotten one and moved on instead we received 3 stop work orders stripping us of 60 working days. At his point any relationship with VOP, or CUTIA just ends in screaming matches.

PLAINTIFF'S ORIGINAL COMPLAINT - 4

## EFFORTS TO COMPLY WITH THE CODE ENFORCEMENT

26.     Foster unsuccessfully tried to comply with code enforcement to stop the targeted violations.

27.     Foster tried to internalize the VOP building code and implement on future projects.

28.     Foster realized Cutia just took thing to the next level any project Foster registered to immediately became cited and ticketed for bogus nuisance tickets.

29.     VOP branded cars would ride past our sites 2-3 times a day.

30.     Similarly, other VOP employees seemed influenced by the situation.

31.     Every project going forward maintained VOP codes, yet Cutia, and Dexter continued to harass Foster.

## DEFENDANTS' HARASSMENT AND RETALIATION

32.     Plaintiff are on a fixed income and timelines and this delays and fines are costly to the Business of Foster.

33.     Defendant Cutia kept harassing Foster on his project He levied fines of 4750 for a dumpster permit that was approved but not picked up because Foster never received the notification. Cutia also tampered with his online portal so I received no notifications numerous VOP employees commented on why I was reaching out to them directly because I wasn't getting any info, they would say some form of "this was approved you should have received an email" after the fights with Cutia all those stopped.

34.     On Feb 6 2019 Cutia entered 840 Cuyler for no reason and proceed to tell my workers and I quote "your guys need to get out of here, he's (Foster) not going to be able to pay

PLAINTIFF'S ORIGINAL COMPLAINT - 5

you when we're done with him I'm going to bankrupt him with fines". My worker texted me immediately after saying there was an emergency.

35. The acts constituting harassment and retaliation by the Defendants include repeatedly issuing Plaintiff tickets, not sending tickets and then adjudicating them without the Plaintiff knowledge, improperly surveilling and patrolling Plaintiff' properties, Condemning one of the Plaintiff property after it was approved for rehab, and also speaking with another person working with Foster and saying how he was going to be trouble to work with because of all the fines and issues with the city , basically telling them they should find another contractor if they want to get through their project .

36. Plaintiff took a job at 216 S Taylor, first order of business was to let the owners know that I was currently engaged in fights with the village and that everything had to be done correctly no cut corners.

37. We submitted all required forms for permits, this particular property was in a historical zone.

38. We attended the meetings and got approval to start demo. We started demo, the owners at one point asked me had we done everything correctly because all of sudden they were seeing villages cars 2-3 times slow moving down their alley. Saying were seeing 1-2 cars a day and never see village cars over here.

39. We start demo of back structure with a permit within a week we receive papers to stop work due to not having correct permits. What turned out happened was they gave us the permit to demo but never told us about the Cook County demo permit and called them on us.

40.     After speaking with the then head of that division with cook county I explained what happened sent him proof I had the permit to work he said yeah if your tearing a structure down you need a cook county permit. He also mentioned his office was called about this.

41.     We were given a ticket for starting work without a permit. Which was false we never started work on this project. VOP code dictates if you start demo work early your demo permit should be doubled. Cutia and Dexter enforced it like we started rebuilding the property without a permits my building permit which is vastly more expensive. Demo permit at most cost 1K vs at the time a building permit highest fee was 4k so double that fee you're paying 8k.

42.     Cutia used this same tactic on the Cuyler project and almost every project going forward improperly fining my properties with selectively applied and enforced its codes ordinances.

43.     With no other fines able to be levied on our properties all of a sudden we started receiving stop work orders stating our permits had been expired 840 cuyler was the first property hit with this fine after receiving nearly 35 tickets and dragging this project from 6-8 months to over 2yrs.

44.     Upon receiving this we immediately fought this because we had been working in the village for at least 2yrs and never heard of this code. All projects had gone over these limits and out first permit actually had an expiration date of 2022. Cutia told us specifically that fee was 1x the permit fee so if your permit cost was 4k you had to pay another 4k. I paid that fee at least twice. I discovered later thru legal action the fee was 1/2 the cost of the permit. We were purposely being over charged.

45.     Once in adjudication I made it know we never received a ticket or placard of any stop work orders, we one that argument and the fine of 3k plus was reduced to about 250$.

46.     Foster had paid the fine already to make sure he started work on time for his client as this property he didn't own.

47.     Plaintiff won his case in adjudication and was given a 250 dollar fine, when we took that ruling reversing the fine and making it 250 to the VOP they wouldn't refund it under direct direction from Cutia.

48.     In an effort to stop these back and forth and to move on I went to Tammie Grossman Cutia's Supervisor and explained what was happening and we had a meeting.

49.     During that meeting I explained about his proclamation to bankrupt me and also his comments to find another contractor. Grossman called the individual present during that exchange and confirmed it with him word for word. I was told she'd look into it and was called back into the office about a week later.

50.     When I arrived Cutia and Grossman were sitting together I asked why he was here, Grossman said to me "I've known this man for years I'm going to go with him screw you, you better get in line". I proceeded to say" you'll be sorry I'm coming for everyone involved and I will have my day" to which they just belly laughed and said I should leave.


**THE TROUBLING PATTERN OF TARGETED HARASSMENT**

51.     Residents who are issued citations by the VOP become subject to its municipal court system.

52.     Once a month, the VOP holds an in-person hearing to allow residents to contest citations.

53.     Defendant VOP only recently allowed residents to attend these hearings remotely.

PLAINTIFF'S ORIGINAL COMPLAINT - 8

54. There's no way for you to overturn a ticket so no matter what you're going to walk out with a fine.

55. During these trials as long as the city shows up and reiterates its case you will be fined.

56. You're basically pleading to lessen the fine not have the ticket thrown away.

57. These proceeding are inherently biased as they basically are telling the judges what they want.

58. Through information we've attained via a FOIA request Cutia responded to an email that called the Plaintiff "fucking monkeys" "retards" and "Niggers" with and email to another inspector telling him to go and ticket Plaintiff for whatever he can find.

59. In one instance Plaintiff was cited for no dumpster permit, Plaintiff not only brought proof that Plaintiff applied not once but twice, but also the permit was approved all of which was confirmed by Cutia himself in court. I brought up that I don't receive the proper info thru my portal because Cutia has messed with it.

60. All I had to do was pay for the permit, instead I was given a $3750 fine.

61. Literally 2 cases later a Caucasian woman walks up and Dexter lays out the case against her which was exactly the same as the Plaintiff.

62. She had gotten a dumpster without permits, Dexter jovially proclaims that yes she got caught.

63. Dexter in another instance on video gotten thru Foia request out right tells the judge when the judge is talking about fines, "I'm heading out there right after this to write tickets" Dexter has not been to the property so how would she know she's writing tickets, unless her objective is to ticket for any reason.

PLAINTIFF'S ORIGINAL COMPLAINT - 9

64. But that the woman came in after the fact and applied and now has a permit.

65. Dexter requested a 25 dollar fine and was obliged. Two of the same cases, diff races, drastically different outcomes.

66. As the Plaintiff holdings grew one thing remained the same, the moment we applied for permits our properties were littered with tickets.

67. It started out the most obvious ones we didn't know about fences or dumpster permits which weren't enforced on previous projects.

68. Then it escalated to cook county permits which I was on my third project before I even heard those put together by anyone in the village (yet none of my project should have even been allowed to proceed without this).

69. Dexter and Cutia anonymously called Cook county on several different occasions after issuing us demo permits they shouldn't have.

70. They'd call Cook county anonymously to have our site shut down and tied up into issues with them as well

71. Dexter and Cutia can't claim ignorance to the facts about Cook county and knowing the procedures.

72. They adjudicated and man of color for not getting the demo permit from cook county at one of trial dates prior to using the technique on me (found this thru an Foia request.

73. Cutia and Dexter main goal was to waste Plaintiff time because they knew time was money.

74. Losing the time was costlier than the tickets. They strung our project out from and expected 4-6 months to 2-3yrs at which I can't hold them and currently have lost 2 to foreclosure sales at the time of filing this Complaint.

75. After they couldn't use the easy citations against the plaintiff for examples they escalated enforcing the 90 day shut down.

76. Which meant if you didn't have an inspection within/every 90 days your permit would become void.

77. This was rule enforced on my 4 project 2-3yrs after I started my first project.

78. This rule isn't hard to abide by unless your ticketed 2-3 times a month for shutdowns for ridiculously minor offenses like grass or piles of covered work debris while we wait for dumpsters.

79. When this rule was first introduced to us on our 4th project it came out of nowhere we had been working steady and making progress on things.

80. When this hit the plaintiff was told he had to pay a fine equal to full permit fee. He obliged 2x on different projects in protest.

81. We found a year later or so when we got a lawyer to help that that amount was wrong it was supposed to be half of the amount. Cutia specifically told the Plaintiff a higher amount.

82. When plaintiff submitted plans for his first 3 projects they were ambitious project but they got approved without any special attention.

83. When it came to his fourth project and so on a special board would be going over the plans and creating months of extra work. Seemingly not allowing the same designs Plaintiff use before in the same zoning types.

84. Plaintiff fifth property 1131 Elmwood would be held up in design back and forth with this board denying us to use designs we used on similar properties.

85. The design we submitted first and had built on similar sized property and exact same zoning was denied and sent back several times costing Plaintiff time and money. While 3

PLAINTIFF'S ORIGINAL COMPLAINT - 11

blocks away and their property was being approved for this design but not only approved but given a variance to build above the stated

86.     While this property was going thru that process the plaintiff acquired a demo permit and it was issued.

87.     Plaintiff was under the assumption you only needed a Cook County permit for complete tear-down because that the only property in which it came up.

88.     Again Dexter/Cutia called Cook County after issuing the Plaintiff a demo permit, to again have the project shut down.

89.     During this confusion time again was wasted as we came to an agreement with the design board on design. The project was approved.

90.     After this Cutia proceeded to have this property condemned.

91.     On top of that Cutia removed this property from the Plaintiff portal so while he was going back and forth with various VOP employees that were working on the permit approval Plaintiff wouldn't get any of their communications thru that portal. Plaintiff would have to reach out directly and this confused them as they constantly mentioned they had responded via the portal.

92.     As the Plaintiff acquired his 5-6 property, VOP and Cutia escalated again by again secretly calling comed and having our temporary power poles reported.

93.     The same temp poles we've had since the first project all of a sudden were allowed on the 5th project and come came out and shut them down.

94.     Again that cost us, this new violation would cost us a considerable amount of time because we don't have any power.

95.     According to VOP code you are entitled to a written out ticket and adjudication, Cutia himself said he would not write tickets for violations and denied the Plaintiff right for a trial.

PLAINTIFF'S ORIGINAL COMPLAINT - 12

## **DEFENDANT VOP'S SELECTIVE EENFORCEMENT**

96.     All information gathered and spoken of throughout this complaint was gathered via 2-3 Foia request. Plaintiff started realizing what was happening was directed at him directly.

97.     Defendant Dexter shut down our property demo permit at 2 days early citing the expiration, yet a whole demo project was allowed at a property on cuyler to continue a whole month after the permit expired.

98.     After a Foia request we learned that several properties currently being worked on literally blocks from the Plaintiff sites weren't be held to the same standards.

99.     Properties weren't being required to get dumpster permits (code required).

100.     Properties weren't being required to have fences around properties (code required).

101.     Properties weren't being held to the 90-day inspection rule (code required).

102.     Properties weren't being required to get cook county demo permits (code required).

103.     Properties weren't being held to Power pole rules (code required).

104.     Even more disturbing was the outright blocks VOP was putting in place to complete projects and their eagerness to get projects torn down.

105.     We also found and are confirming that permit prices for my specific properties has been al-most tripled compared to other builder doing the same job. Based on foia results multiple properties approved and paid for example 840 Cuyler we paid around $4000 for that permit it was almost 5500sq ft. 3 sorry addition, they the highest current addition around the area of highland was maybe 5k for project started at the same time as we applied, VOP asked for 12k this amount

had nothing to do with a fine Cutia actually wanted to double and make me pay 24K for that permits citing a ticket.

106. When the plaintiff went in for permits for his last 2projects a new construction at 524 Cuyler which was previously approved demo had occurred (no cook county permit was issued) and 1143 Clinton and 1139 Highland.

107. Highland and Cuyler were ready for permits I was asking what were their amount so I could pay and get moving.

108. After being delayed about 10 weeks by Dexter dealing with her shenanigans getting my con-tractors approved (same ones we've been using for years).

109. We told the fee was 18k for Cuyler and that it would be 24k for highland (12k for the building permit & 12k for the starting work without a permit).

110. The 12k for the building permit of our smallest property is 3x more expensive than the permit for our biggest property.

111. This was the first I had heard of this never received a ticket for this.

112. This was a staple in what Cutia would do, Plaintiff has never started working on a project prior to issuance of a permit.

113. Cutia had been improperly applying that fine, according to code if you start work on any part of the project the relating permit would be doubled

114. In every instance if you start demo prior to the issuance of a permit your Demo permit would be doubled. This was confirmed in exchange with the city lawyers once Plaintiff had a lawyer involved.

115. Cutia knew demo permit maxed out at about 1k so double fee is only 2k. When he improperly applies it to the building permit that double fee rises to 8k-12k additional.

PLAINTIFF'S ORIGINAL COMPLAINT - 14

116.    Cutia flat out said he would not write the ticket so it could be properly adjudicated and I was just guilty and owed that money.

117.    It is also important to note that Plaintiff was told specifically by Cutia pay the fees on both of these and your good to build nothing else is holding you back.

118.    Once the plaintiff was given the ultimatum to pay or do no work, he told Cutia he was crazy if he thought I'd allow it I'm getting a lawyer.

119.    About 2 weeks later I receive a letter stating all my permits were being revoked because I owed fines over 26k.

120.    These fines result from tickets again Plaintiff never received which were for a port being too close to the lot line and a cut grass ticket.

121.    Defendants plan was to try and pull Plaintiff permits as a whole the entire time.

122.    Plaintiff was notified by a city employee who wishes to remain anonymous 20 mins before court started about these cases up for court that day. Plaintiff was forced to go not knowing what he was walking into.

123.    To date we have found over a dozen instances of this same placement of toilet without the ensuing tickets. Including on VOP owned construction sites.

124.    As outlined below VOP director Grossman, Cutia, Dexter, and city attorneys never followed appropriate guidelines in handling any of the Plaintiff violations and subsequent revocation of permits. We've included the entire section for the courts to have. We highlight what areas were blatantly not done or omitted.

125.    VOP VILLAGE CODE 29-1-17: ENFORCEMENT OF ADMINISTRATIVE LAW JUDGE'S ORDER: A. Any fine and any administrative, enforcement, or compliance costs imposed by an Administrative Law Judge's order that remain unpaid after the exhaustion of, or the

failure to exhaust, judicial review procedures, unless stayed by a court of competent jurisdiction, shall be a debt due and owing the Village and may be collected in accordance with applicable law.

B. After the expiration of the period for which judicial review may be sought, unless stayed by a court of competent jurisdiction, the determination of liability of an Administrative Law Judge may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

C. In any case in which a respondent fails to comply with an Administrative Law Judge's order to correct a code violation, any expenses incurred by the Village to enforce the Administrative Law Judge's or-der, including, but not limited to, the cost of demolition, repair, and/or enclosure of dangerous or unsafe buildings or uncompleted and abandoned buildings, and costs for the removal of garbage, debris, and other hazardous, noxious, or unhealthy substances or materials from buildings or other real property, and including attorney fees after they are fixed by an Administrative Law Judge, shall be a debt due and owing the Village. Prior to any expenses being fixed by an Administrative Law Judge pursuant to this subsection, the respondent shall be provided with notice that directs the respondent to appear at a hearing before an Administrative Law Judge to determine whether the respondent has failed to comply with the Administrative Law Judge's order. The notice shall set the date, time and place for the hearing, which shall not be less than seven (7) days from the date the notice is served. Notice may be served by personal service, first class mail or by an overnight commercial delivery service and the seven (7) day period shall begin to run on the date that the notice was personally served, deposited in the mail or placed for delivery with the overnight commercial delivery service.

D. If any fine, penalty, and/or cost is owing and unpaid after a determination of liability under this chapter has become final and the respondent has exhausted or failed to exhaust judicial procedures for review, the Director of the Office of Adjudication shall cause a notice of debt due

PLAINTIFF'S ORIGINAL COMPLAINT - 16

and owing to be sent to the respondent in the manner provided in subsection 29-1-12C1 of this article.

E. Upon being recorded in the manner required by Article XII of the Code of Civil Procedure or by the Uniform Commercial Code, a lien shall be imposed on the real estate or personal estate, or both, of the respondent in the amount of a debt due and owing the Village. The lien may be enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction.

F. If respondent fails to pay such debt within fourteen (14) days after service of the notice of debt, the Village may take the following actions in addition to any debt collection authorized by law: 1. Decline to issue, renew or provide any license, permit, zoning variance, or permission applied for or requested by respondent under this code or under any other code or ordinance of the Village until respondent pays such fine or penalty; or 2. Decline to issue or renew residential parking permits, temporary residential parking permits or passes, or any other permit required and applied for by respondent under this code or any other code or ordinance of the Village, until respondent pays such fine or penalty.

G. 1. When the Director becomes aware that a respondent has failed to pay such fine or penalty within the prescribed fourteen (14) day period, he or she shall notify the departments responsible for issuing li-censes and permits as described above that the respondent has a delinquent debt, and that no licenses or permits may be issued to the respondent until the debt has been fully satisfied. 2. At or prior to the time when a respondent applies for a license or permit, or for a renewal of such license or permit, the department that is responsible for issuing the license or permit shall notify the respondent that he or she is ineligible for such license or permit issuance or renewal due to the outstanding debt. The notice shall inform the respondent that he or she may

PLAINTIFF'S ORIGINAL COMPLAINT - 17

request a description of the outstanding debt from the Finance Department, and shall inform the respondent of his or her right to appeal the denial of the license or permit under this section. If notice is provided by mail, it shall be sufficient to mail the notice to the last address the respondent provided to the issuing department. The date of notice shall be the date the notice was deposited in the mail, if served by first class mail; the date of delivery, if served by personal service; or the date of service if served by any other manner. 3. Upon the respondent's request, the Finance Department shall provide the respondent with a written description of his or her outstanding debt. A respondent shall have ten (10) business days from the date of notice to appeal the Department's denial by requesting a hearing by the Director of Adjudication, or his or her designee. 4. Requests for hearing shall be made in writing to the Director's office. A request for hearing shall include: the full name, address and telephone number of the respondent; a written statement signed by the respondent setting forth facts, law or other information relevant to establishing a defense to the Department's denial; a copy of the notice provided to the respondent by the license/permit issuing department under this subsection 29-1-17G; and, any documentary evidence that supports the respondent's appeal, including receipts for the payment of an alleged debt. Upon receipt of a timely and proper request for a hearing, the Director or his or her designee shall assign a hearing date no later than fifteen (15) business days after the date of request. The hearing shall not be continued without the consent of the respondent. The Director, or his or her designee, shall determine whether or not the respondent is ineligible for a li-cense/ permit pursuant to this section. The hearing shall comply with the following provisions: a. The Director, or his or her designee, shall abide by any prior determination that a debt exists and the scope of review shall be limited to whether the debt has been satisfied and whether the determination that a debt exists was issued against the respondent. The petitioner shall not be entitled to raise any defenses related to his or her liability

PLAINTIFF'S ORIGINAL COMPLAINT - 18

for the underlying debt. b. The formal and technical rules of evidence shall not apply in the conduct of the hearing. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs. c. At the conclusion of the hearing, the Director or his or her designee shall issue a final order that the respondent is either eligible or ineligible for issuance or renewal of the license/permit. If the respondent is found to be ineligible, the petitioner's license/permit may not be issued or renewed prior to the payment of the outstanding debt. The Director, or his or her designee, shall issue a final order no more than fifteen (15) business days after the conclusion of the hearing.

H. Notwithstanding the provisions of subsection 29-1-17G of this section, the Village may issue an initial or renewal license or permit to a respondent if the Director of the issuing Department or other appropriate Village Department or agency determines that: 1. The respondent has entered into an agreement with a court of competent jurisdiction, the Department of Finance, or other appropriate Village Department or agency, for the payment of all debts owed and the respondent is in compliance with the agreement; or 2. The respondent is contesting liability for or the amount of the debt in a pending administrative or judicial proceeding; or3. The respondent has filed a petition in bankruptcy and the debts owed are dischargeable in bankruptcy; 4. The overriding interests of public safety and welfare require the issuance of the permit or license.

I. When the holder of a license or permit is notified in accordance with subsection 29-1-17G2 of this section that such license or permit will not be renewed unless an outstanding judgment is paid, the license or permit shall remain in effect during the pendency of any properly filed appeal as described in subsection 29-1-17G of this section. When a license or permit is found to be ineligible for renewal through the appeal process, it shall expire at such time as the license or

PLAINTIFF'S ORIGINAL COMPLAINT - 19

permit holder has exhausted or failed to exhaust the appeal procedures described in subsection 29-1-17G of this section.

J. Nothing in this section shall prevent the Village from enforcing or seeking to enforce any order of an Administrative Law Judge in any manner provided by law. (Ord. 2003-0-42, 10-7-03).

126. According to the above code VOP failed to according to line D "Cause a notice of debt due to be sent to Plaintiff from adjudication. In fact, I didn't actually get a real notice of what they said I was due until a lawyer was involved.

127. VOP also failed to follow that up that action set forth in VOP village code with a lien placed on property.

128. VOP also failed to follow Village code protocols that state 14 DAYS AFTER notice of lien AND NON PAYMENT of lien, that is when it can be revoked or denied.

**COUNT I –CLASS OF ONE VIOLATION OF EQUAL PROTECTION (Plaintiff v. All Defendants)**

129. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

130. Defendant VOP, through its employees and agents and at the behest of Defendant Cutia intentionally targeted Plaintiff for unequal treatment under the law, including that: a) Defendants' agents issued the Plaintiff at least 50 bogus tickets, falsely accusing them of violating the VOP's ordinances. In reality, Plaintiff merely were following instructions and past history on how to conduct business inside the VOP. Defendants' conduct was a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiff and deprive them of their property under color of law and ruin their business. The Defendants did not attempt to issue such tickets to

PLAINTIFF'S ORIGINAL COMPLAINT - 20

other residents/businesses for non-existent violations of law. b) Defendants' agents issued tickets without even sending copies to plaintiff detailing which VOP ordinance was violated when it was violated or any details that would have allowed Plaintiff to remedy the situation. This was a deliberate, arbitrary, capricious, and malicious attempt to financially cripple Plaintiff and deprive them of their property under color of law. The Defendants did not attempt to issue such tickets to other residents/business for nonexistent violations of law. c) Defendants did not follow the Illinois Administrative Code by not following correct steps prior to pulling permit. d) Defendants issued several tickets to Foster for petty infractions and alleged building violations. This was a deliberate, arbitrary, capricious, and malicious attempt to inconvenience Foster. The Defendants did not attempt to issue such tickets to other residents for such other purported violations of law. e) Said Defendants, acting under color of law, intimidated and coerced Plaintiff to try to pummel them into submission or run them out of the VOP. The Defendants had no rational basis in law for taking these actions against the Plaintiff.

131.    The code enforcement and the police officers were motivated by Defendant Cutia's illegitimate animus against the Plaintiff.

132.    The VOP wrote over 5 tickets/Stop order for having certain items on their front lawn when it allowed similar types of items to remain on the property of other similarly situated property owners.

133.    Plaintiff never had any legitimate violations. The Defendants or their agents concocted phony violations, contorted the ordinances to target Plaintiff, vandalized Michael's property, and threatened Michael with bodily harm.

134.    The actions of Defendant were intentional, willful, and malicious and/or in reckless disregard of Plaintiff' rights as secured by 42 U.S.C. §1983 and the Civil Rights Act of 1991.

PLAINTIFF'S ORIGINAL COMPLAINT - 21

135.   WHEREFORE, for the foregoing reasons, requests that this Court enter judgment in their favor and against Defendant VOP in an amount to be proved at trial, including for general compensatory, special, consequential damages, for emotional distress and reputational harm, for attorneys' fees under 42 U.S.C. § 1988, and for all such other relief to which he is entitled and the Court deems just and proper.

**COUNT II – Denial of Due Process Under the Fourteenth Amendment (Plaintiff v. All Defendants)**

136.   The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

137.   The Due Process Clause prevents the government from declaring that Plaintiff' lawful and harmless activities and conditions constitute nuisances when such activities and conditions are not nuisances, and any harm that could arise from such actions and conditions would be remote and highly speculative.

138.   Instead, the VOP treats these activities and conditions as nuisances and code violations to retaliate against certain citizens for asserting their protected conduct.

139.   Foster has property interests in their home.

140.   Foster was deprived, in whole or in part, of their property interests described above, under color of state law, in that they have over 100,000.00 in fines entered against them, and resulting foreclosures of 3 properties totaling over $2 Million in damages entered against their properties, which will preclude it from being sold by the plaintiff.

141.   Foster was also deprived of his liberty interests in their go completed with reputation in the community. Defendants repeatedly accused Foster of phony municipal violations

PLAINTIFF'S ORIGINAL COMPLAINT - 22

and used the Village's police powers to cripple them financially by excessively fining them and encumbering their property.

142. The VOP accomplished this deprivation by harassing and b) Failing to provide a method to abate the nuisance; retaliating against Plaintiff by: a) Issuing phony municipal tickets, each carrying a hefty fine; c) Failing to provide a legally sufficient description of the activity or conduct alleged to constitute a violation of the Ordinances; d) Failing to provide a written final order that included findings of law; e) Failing to issue a determination based on the evidence presented at any of the hearings of whether a Code violation exists; f) Failing to provide the name(s) of the alleged complaining witnesses who sent emails complaining about Plaintiff' Property; g) Failing to allow them to be heard before issuing default judgments against them; h) Levying a lien against their property without the requisite prove-up hearing and without waiting for the requisite timeframe prescribed by statute.

143. Defendants used the apparatus of the Village to violate Plaintiff' property and liberty interests by making allegations of wrongdoing against Plaintiff and their property, which Defendants knew at the time to be false, for the sole purpose of targeting and harassing Plaintiff.

144. As a direct and proximate result of the Defendants' actions, the named Plaintiff have suffered and will continue to suffer irreparable injury to their constitutional rights.

145. As a direct and proximate result of the Defendants' campaign to harass, retaliate, and punish Plaintiff, they have been deprived of their due process rights as guaranteed under the Fourteenth Amendment of the United States Constitution.

146. WHEREFORE, Plaintiff pray that judgment be entered in their favor and that this Court award compensatory damages from Defendants in an amount to be determined at trial for the matters alleged in this Count; punitive damages to the extent provided for by law, and in an

amount to be determined at trial; costs of suit incurred; reasonable attorney's fees; and provide such other and further relief as the Court may deem proper.

### COUNT V – Indemnification

147.     The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

148.     Defendant VOP is obligated to assume financial responsibility for the actions committed by its officials or employees, including Defendant Cutia.

149.     WHEREFORE, for the foregoing reasons, Plain-tiffs requests that this Court enter judgment in their favor, and against Defendant Village of Oak Park, Illinois, and enter an order requiring Defendant Village to indemnify the other Defendant in this matter.

### PRAYER FOR RELIEF

The actions of Defendant were intentional, willful, and malicious and/or in reckless disregard of Plaintiff' rights as secured by 42 U.S.C. §1983 and the Civil Rights Act of 1991. WHEREFORE, for the foregoing reasons, requests that this Court enter judgment in their favor and against Defendants in the sum of $ _6,500,000_ , including for:

   i)      general compensatory

   ii)     special consequential damages

   iii)    for emotional distress

   iv)     reputational harm

   v)      for attorneys' fees under 42 U.S.C. § 1988

   vi)     for all such other relief to which he is entitled and the Court deems just and proper.

PLAINTIFF'S ORIGINAL COMPLAINT - 24

Moreover, the Plaintiff pray that judgment be entered in their favor and that this Court award compensatory damages from Defendants in an amount to be determined at trial for the matters alleged in this Count:

i)      punitive damages to the extent provided for by law, and in an amount to be determined at trial;

ii)     costs of suit incurred;

iii)    reasonable attorney's fees;

iv)     and any such other and further relief as the Court may deem proper.

Generally, the Plaintiff pray that the Court grant the following reliefs:

a)      Conduct a mediated settlement conference or refer the case to its court-annexed mediation program to assist the parties to bring about a settlement of this case;

b)      Audit the Oak Park Code Enforcement ticketing policies, housing code, and municipal court for its treatment of people of color.

c)      Award Plaintiff actual and compensatory damages to the extent permissible by law to compensate the Plaintiff for injuries and losses caused by Defendants' conduct;

d)      Award Plaintiff prejudgment interest;

e)      Award Plaintiff reasonable attorneys' fees and costs;

f)      All other relief as the interests of justice requires.


Dated this ___ day of ~~October~~ November.


Respectfully Submitted,

PLAINTIFF'S ORIGINAL COMPLAINT - 25

Foster Chambers,
Plaintiff in pro per