UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FOSTER CHAMBERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-6008 |
| v. | ) | |
| | ) | Judge Jeffrey I. Cummings |
| VILLAGE OF OAK PARK, TAMMY GROSSMAN, KEVIN JACKSON, STACY DEXTER, and STEVE CUTIA, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendants Village of Oak Park, Tammy Grossman, Kevin Jackson, Stacy Dexter, and Steve Cutia's Motion to Dismiss Plaintiff Foster Chambers's Third Amended Complaint. (Dckt. #59.) For the following reasons, Defendants' motion is granted. Chambers's claims against Kevin Jackson are dismissed with prejudice, and the claims against the Village of Oak Park and the other named defendants in their official capacities are dismissed without prejudice. The Court grants plaintiff leave to file a Fourth Amended Complaint by July 24, 2024, and defendants are granted until August 14, 2024, to answer or otherwise plead.

**I.      PROCEDURAL BACKGROUND**

Pro se plaintiff Foster Chambers ("Chambers") filed this action on November 1, 2022, and subsequently amended his complaint three times, twice as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) and once with leave of Court. (*See* Dckt. #1; Dckt. #17; Dckt. #37; Dckt. #66). Chambers's Third Amended Complaint ("TAC") (Dckt. #66) names as defendants the Village of Oak Park ("the Village"), Tammy Grossman, Kevin Jackson, Stacy

1

Dexter, and Steve Cutia (collectively, "Defendants"). Against these defendants, Chambers names two counts for Equal Protection violations on a "class of one" theory, actionable through 42 U.S.C. §1983, labeled as: (1) "Count I: Class of One Violation"; and (2) "Count II: Constitutional Tort—Violation of Equal Protection Clause of the Fourteenth Amendment in a Class of One Context." (*Id*. at 13, 17.)[1]

Cognizant of Chambers' declaration that his claims "in this case are based on a class-of-one theory of liability (Dckt. #67 at 2) and finding no discernable difference between these two counts, the Court construes the TAC as asserting a class-of-one claim against each defendant.

## II.   LEGAL STANDARD

The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A party may move to dismiss a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," and such a motion tests the legal sufficiency of the complaint and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (cleaned up). Plausibility is not satisfied by mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," or facts "merely consistent" with a defendant's liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007).

---

[1] Referenced page numbers are taken from the CM/ECF header. When referring to the TAC, the Court cites to page numbers instead of paragraphs because the TAC does not use clear and consistent paragraph numbers.

The Court "must draw all reasonable inferences in favor of the non-moving party," *Vesuvius USA Corp., v. Am. Com. Lines, LLC*, 910 F.3d 331, 334–35 (7th Cir. 2018), and, moreover, "is obligated to liberally construe a *pro se* plaintiff's pleadings," *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (citations omitted); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Still, plaintiffs can plead themselves out of Court by alleging facts that foreclose relief. *See Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015); *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013).

### III. THE ALLEGATIONS OF THE COMPLAINT

To support his claims, Chambers alleges the following facts, which the Court accepts as true for the limited purpose of ruling on the motion to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). Chambers resides in Oak Park, Illinois, where he has worked as a contractor. (Dckt. #66 at 3; Dckt. #14 at 1). Steve Cutia ("Cutia") serves as the Head Building Inspector for the Village. (Dckt. #66 at 3). Stacy Dexter ("Dexter") serves as Cutia's assistant and manages the permit division." (*Id*.). Tammy Grossman ("Grossman") is the Senior Municipal Official who oversees the Village's Building and Permitting divisions. (*Id*.). The Village is a municipality incorporated under the laws of the State of Illinois. (*Id*.).

1. **The February 2019 Confrontation with Cutia**

On February 6, 2019, Cutia entered a property that Chambers owned at 840 Cuyler in the Village and spoke with two contractors (Luis Navarro and Myron Robinson) who were performing work for Chambers on the property. (*Id*. at 71-72, 75-76).[2] Cutia told the Navarro that they needed to leave because they were definitely not going to get paid and there was no

---

[2] Chambers attached the affidavits of Luis Navarro, Tahir Hafeez, and Myron Robinson to his TAC. (Dckt. #66 at 71-76). These documents are considered part of the TAC for purposes of Rule 12(b)(6). *See, e.g.*, *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

need to come back. (*Id.*, at 71, 75). Cutia further stated that he was going to "make sure" that Chambers would not have the money to pay them and that Chambers "won't be able to work in this town again." (*Id.*). One of the contractors (Robinson) looked out the window, saw that Cutia was visibly angry, and overheard him state that "leaving Chambers project now. He's done, shut this and anything else he has down. I want him gone." (*Id.*, at 75).

Navarro texted Chambers to let him know that they had an emergency and he sent him a copy of Cutia's card. (*Id.*, at 71). Chambers called Navarro back and Navarro told him that Cutia said he was out to bankrupt him and that he was not going to work again. (*Id.*). Chambers got into a verbal altercation with Cutia and he later called Navarro back with defendant Tammi Grossman on the phone. (*Id.*, at 4, 71). Grossman asked Navarro questions about what had occurred that day and Navarro told her about how Cutia had said he was going to bankrupt Chalmers, that they (Navarro and Robinson) should leave, and that they would not get paid. (*Id.*, at 71).

Cutia later told one of Chambers' investors that Chambers was in "deep trouble" with the Village due to thousands of dollars in fines imposed on him and that Village would make it hard for the project if Chambers remained associated with it. (*Id.*, at 4). After these events, Chambers received over 50 citations, was fined over $30,000 for the property at 840 Cuyler, and was told he could no longer work in the Village going forward. (*Id.*, at 4, 6).

2. **Issues with Cook County "Demo" Permits**

The Village cannot grant its own permits to start any work related to a rehab project without the Village first being in receipt of a "Cook County 'Demo' Permit," which requires a

4

safety inspection and an asbestos test. (*Id.* at 5-6).³ Nonetheless, prior to the altercation between Chambers and Cutia, the Village granted Chambers permits to begin work at several properties (including at 840 Cuyler) without first ensuring that he had a Cook County Demo Permit. (*Id.* at 6).

After the altercation between Chambers and Cutia, Cutia and Dexter issued stop work orders to Chambers regarding several of his projects because he lacked Cook County Demo Permits. (*Id.*, at 5-6). However, records that Chambers received from Freedom of Information Act requests to Cook County and the Village indicate that the Village allowed 47–54 similar projects to proceed without the Village first being in receipt of Cook County Demo Permits for them. (*Id.* at 5–6.) Some of those properties are on the same block as Chambers's properties. (*Id.*, at 6). Chambers had one property under contract to buy, but the Cook County Demo Permit inspection revealed asbestos that required remediation costing approximately $30,000 before work could commence. (*Id*. at 7.) Prior to Chambers' involvement, the Village gave this property a certificate of occupancy after another contractor had worked on the property for almost three months without a permit from the Village and without any stop work orders or fines. (*Id*.).

3. **Porta Potty Violations**

The building permits issued by the Village require at least ten feet between porta potties and the "lot line." (*Id*. at 7). The Village cited Chambers for this violation at one of his properties and fined him over $12,000. (*Id*.). Chambers had not noticed this requirement in his building permits until the Village cited and fined him for violating it. (*Id*.). Chambers did not

---

³ Asbestos is found in about ninety percent of the older homes in the Village, and it must be remediated by a licensed remediator before a person seeking to rehab the property can obtain a Cook County Demo Permit. (*Id.*, at 5).

receive notice of the violation, but he was fined for it daily. (*Id*.). Even so, this requirement regarding porta potties was not enforced either at Chambers' other six properties in the Village (including at 840 Cuyler), or at other properties in the Village that maintained porta potties within ten feet of the property line. (*Id*. at 7-8). In February 2023, Chambers also saw a Village Inspector outside of property he lost to foreclosure where work was progressing despite a porta potty located within ten feet of the property line violation. (*Id*. at 8).

4. **Fence Line Violations**

The Village rules require that an owner maintain fencing with a minimum height of six feet around residential projects. (*Id*. at 8-9). Chambers was unaware of this fencing requirement until the Village cited him for violating it in connection with his property at 840 Cuyler. (*Id*.). Prior to his receipt of this citation, Chambers had violated this fencing requirement at another property (1173 Highland Avenue) but had not received any citations. (*Id*.). The Village issued Chambers three separate citations for violation of the fencing requirement at 840 Cuyler and issued a stop work order in conjunction with each citation. (*Id*. at 8). The Village allowed other properties that lacked compliant fencing to start and complete work and pass Village inspections. (*Id*. at 9).

5. **Permit Extension Violations**

Under Village rules, permits "expire[] after 90 days of inactivity," which is defined as a period of 90 days without an inspection. (*Id*.). After working on three projects in the Village and never receiving a citation for the permit extension rule, he received a citation during work on his fourth project. (*Id*.). The Village has not enforced this requirement as to at least four other properties not related to Chambers, including one property that went 150 days without an

inspection. (*Id*. at 10.) Chambers further learned that "his projects were being fined at a rate 4x higher than what" the Village's code provided. (*Id*.)

### 6. Miscellaneous Additional Fines and Citations

The Village issued Chambers a $12,000 ticket for "uncut grass" on a property that "barely had any grass," and he was also fined for having a temporary power line on his sites. (*Id.*, at 10-11). The Village also fined Chambers over $3,700 for receiving a dumpster without a permit even though it fined a white woman for the same violation only $25. (*Id.* at 4-5). In October,[4] Cutia instructed Dexter to get Chambers' permit cost numbers for two of his properties. Dexter told Chambers that he owed fines totaling $28,000 for the two properties and that he would receive his permits and could continue work if he paid that sum. (*Id.*, at 10). After Chambers disputed this figure because it included fines and violations for tickets he never received, the Village sent him a letter indicating that he owed an additional $26,000 for his other projects and it pulled the permits for all his projects. (*Id.*). Chambers was also informed that he could no longer work in the Village. (*Id.*).

Defendants' actions resulted in Chambers losing six properties to foreclosure. (*Id.* at 15). Chambers' businesses have been shut down due to the inability to recoup revenue from these projects, and he and his investors have been unable to continue work in the field because their credit is ruined, and they can no longer obtain financing. (*Id.* at 15).

### IV. DISCUSSION

Defendants assert multiple reasons as to why Chambers' class-of-one claims must be dismissed. Among other things, they assert that: (1) Chambers's claims are time-barred; (2) Chambers fails to state a claim for a class-of-one violation because he pleads that he was not in

---

[4] The TAC does not specify the year this allegedly occurred.

7

compliance with the Village's ordinances and requirements, thus giving the Village a rational basis for enforcing its laws; and (3) Chambers fails to plead sufficient facts against Kevin Jackson.[5] The Court addresses each argument in turn.

### A. All Claims That Accrued Prior to November 1, 2020, Are Time-Barred.

The applicable statute of limitations for constitutional tort claims (including class-of-one claims) under §1983 is two years in Illinois. *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 805 (7th Cir. 2008). Defendants assert that the entire TAC should be dismissed following the logic that: (1) many of the citations and fines Chambers challenges were issued "on or before 2019"; (2) Chambers knew that his constitutional rights may have been violated in 2019; (3) the two-year time period for Chambers to sue expired in 2021; and (4) Chambers did not file his initial complaint until November 1, 2022. (Dckt. #59-1 at 8). Chambers asserts that his claims are timely notwithstanding the fact that the differential treatment began in 2019 because the defendants' violations have been ongoing through 2023, and the statute of limitations is tolled until the occurrence of the last violation under the continuing violation theory. (Dckt. #67 at 8-9).

The statute of limitations is an affirmative defense, which a complaint need not "anticipate and overcome." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674–75 (7th Cir. 2009). Nonetheless, a plaintiff may "plead[] himself out of court by alleging

---

[5] Defendants – without the citation of any pertinent authority – also seek to dismiss Chambers' class-of-one claims on the ground that he failed to plead a *Monell* claim by alleging that his injuries were caused by a policy or custom attributable to the Village. However, as Chambers correctly notes (Dckt. #67 at 7), class-of-one claims do not require proof of a municipal policy or custom. Instead, "a class-of-one plaintiff must prove that '(1) a *state actor* has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017), *quoting Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010) (emphasis added). Thus, Chambers need not allege or prove that the Village had a policy or custom to establish his class-of-one claims.

facts sufficient to establish the complaint's tardiness," such that dismissal is appropriate. *Id.*; *see Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *see also D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013); *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995). Still, courts should not dismiss a complaint for statute-of-limitations reasons when "there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense," because "questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Center v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

The statute of limitations for a §1983 claim accrues when the plaintiff knew or should have known of his injury. *Limestone Dev. Corp.*, 520 F.3d at 805. Here, each fine and citation received by Chambers produced a separate and distinct injury that Chambers knew of on the date that he received the fine or citation. *See, e.g., Yakopovich v. Borough of Centerville*, No. 2:20-CV-00331-CCW, 2021 WL 4975210, at *4-5 (W.D.Pa. Oct. 25, 2021) (each time plaintiff was issued a ticket for a code violation related to his property was a separate and distinct violation for purposes of his class-of-one claim); *Whistle Stop Farms, LLC v. Team of Thompson Station, Tenn.*, No. 3:16-cv-02934, 2018 WL 5313340, at *2-3 (M.D.Tenn. Oct. 26, 2018) (each time defendant town denied plaintiff approval for his development plans was a discrete act for purposes of his class-of-one claim). Chambers had two years from his receipt of each fine and citation to file a lawsuit regarding it, and the continuing violation doctrine does *not* apply. *Id.*;

9

*Limestone Dev. Corp.*, 520 F.3d at 805; *Patterson v. Strippoli*, 639 Fed.Appx. 137, 140-41 & n.7 (3d Cir. 2016).

Consequently, all of Chambers' claims that accrued prior to November 1, 2020, (two years before he filed his first complaint) are time-barred and dismissed with prejudice. *See, e.g., Patterson*, 639 Fed.Appx. at 141 (claims that pre-date the two-year statute of limitations period are time-barred); *Yakopovich*, 2021 WL 4975210, at *4 (same); *Whistle Stop Farms*, 2018 WL 5313340, at *2-3 (same). This includes Chambers' claims related to 840 Cuyler, which began to accrue in February 2019. On the other hand, any of Chambers' claims based on fines and citations issued *after* November 1, 2020, are not barred by the statute of limitations because Chambers filed his complaint within two years of the time that such claims accrued. *See Limestone Dev. Corp.*, 520 F.3d at 805 ("If subsequent discriminatory acts caused additional injury, the limitations period for suing on those acts accrued when the additional injury was discovered.").

### B. Chambers Class-of-One Claims Are Dismissed to the Extent That They Are Based on His Admitted Violations of the Village's Code.

Chambers asserts that Defendants violated his Equal Protection rights under the Fourteenth Amendment using a class-of-one theory, such that that Defendants discriminated against him not based on his membership in a protected class, but rather by singling him out as an individual and treating him differently from others similarly situated. Local government "land-use decisions are entitled to great deference when constitutional claims are raised in federal court." *Miller v. City of Monona*, 784 F.3d 1113, 1119 (7th Cir. 2015), *quoting CEnergy-Glenmore Wind Farm #1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014). It is well-settled that enforcement of local government codes "involve[s] discretionary

decisionmaking based on a vast array of subjective, individualized assessments." *Miller*, 784 F.3d at 1119, *quoting Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008).

As the Seventh Circuit has recognized, "[c]lass-of-one claimants carry a heavy burden." *FKF J, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021). Thus, to state a class-of-one claim, Chambers must plead that: (1) a state actor has intentionally treated him differently than others similarly situated, and (2) there is no rational basis for the difference in treatment. *Amin Ijbara Equity Corp.*, 860 F.3d at 493 (7th Cir. 2017); *Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010). For the second element, the Court need only find a "*conceivable* rational basis for the difference in treatment," which does not need to be the actual basis for the Village's actions. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021) (emphasis in original) (citation omitted); *Greenwald Fam. Ltd. P'ship v. Mukwonago*, 100 F.4th 814, 823 (7th Cir. 2024). Moreover, "'a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *FKF J, Inc.*, 11 F.4th at 588, *quoting Miller*, 784 F.3d at 1121; *Greenwald*, 100 F.4th at 823.

When asserting a class-of-one claim, plaintiffs can "plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials." *Miller*, 784 F.3d at 1121; *see D.B. ex rel. Kurtis B.*, 725 F.3d at 686 ("[A] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts. Allegations in a complaint are binding admissions, and admissions can of course admit the admitter to the exit from the federal courthouse.") (cleaned up). If a plaintiff fails to negative any reasonably conceivable state of facts that could provide a rational basis for the difference in treatment, their class-of-one claim will be dismissed without regard to whether defendant has intentionally treated them differently than others similarly situated. *Greenwald*, 100 F.4th at 823

11

("Our analysis begins and ends at the second step. We agree with the district judge that the Village had a rational basis for every one of the decisions at issue in this case."). Thus, Chambers must allege sufficient facts to overcome the presumption of rationality that applies to government classifications to survive defendants' Rule 12(b)(6) motion. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546-47 (7th Cir. 2008).

In this case, Chambers alleges and thereby admits that he was fined and issued citations for violations of the Village's Code and rules concerning the location of porta potties on his properties, his failure to obtain proper fencing for his properties, his continued work on permits that expired due to inactivity, his failure properly to cut grass, his receipt of a dumpster on his property without a permit, and his failure to obtain Cook County Demo Permits. *See, e.g., Storey v. City of Alton, Illinois*, 710 Fed.Appx. 706, 708 (7th Cir. 2018) ("Storey 'admits that he did commit certain ordinance violations and did pay fines for these violations,' and his admission demonstrates that the City had a rational basis for citing him."). The Village's issuance of fines and citations for these violations had a rational basis even if – as Chambers alleges – the Village began taking action against Chambers after his confrontation with Cutia in 2019. As the Seventh Circuit has held, "[a] given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity. . . . If we can come up with a rational basis for the challenged action, that will be the end of the matter – animus or no." *Fares Pawn, LLC v. Indiana Dep't of Fin. Institutions*, 755 F.3d 839, 845 (7th Cir. 2014) (cleaned up).[6]

---

[6] "[I]t is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *145 Fisk, LLC*, 986 F.3d at 771 (cleaned up); *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005) ("Animus thus comes into play only when, no rational reason or motive being imaginable for the injurious action taken by the defendant against the plaintiff, the action would be inexplicable unless animus had motivated it.").

Thus, Chamber has failed to overcome the presumption that these challenged actions by defendants had a "rational basis" within the meaning of the above precedent and his class-of-one claim must be dismissed to the extent that it is based on them. *See, e.g., 145 Fisk, LLC*, 986 F3d at 772-73; *Miller*, 784 F.3d at 1121-22; *Storey*, 710 Fed.Appx. at 708 ("Storey 'admits that he did commit certain ordinance violations and did pay fines for these violations,' and his admission demonstrates that the City had a rational basis for citing him."). The Court will give Chambers one last opportunity to properly allege a class-of-one claim in light of his allegation that he was fined on at least one occasion in an amount that was four times what was provided for by the Village's Code. (Dckt. #66 at 9-10); *see Geinosky*, 675 F.3d at 747 (In conducting its analysis, the Court may consider allegations of "a wrongful act that necessarily involves treatment departing from some norm or common practice.").

### C. Chambers' Claim Against Kevin Jackson Is Dismissed with Prejudice.

Defendants move to dismiss Kevin Jackson, whom Chambers named as a defendant but did not otherwise mention in his complaint.[7] Chambers's complaint must provide fair notice to Jackson of the claim against him. *See Twombly*, 550 U.S. at 555. Because the TAC does not include any factual allegations that Jackson took any action against Chambers and merely includes his name in the case caption, Chambers has failed to state any claim against Jackson individually. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (Liability does not attach under §1983 "unless the individual defendant caused or participated in the constitutional

---

[7] Chambers states in his response that "Jackson, new to the position after learning of Cutias/Grossman's conduct, equally did not commence any investigation with the department." (Dckt. #67 at 12.) Chambers's TAC, however, did not include any factual allegations regarding Jackson's role in the treatment Chambers alleges, nor did it even list Jackson in the "Parties" section. (Dckt. #66 at 3).

deprivation."); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

The motion to dismiss is therefore granted. Defendants raised this argument in their prior motions to dismiss (*see* Dckt. #32-1 at 11; Dckt. #29-1 at 11), yet Chambers failed to amend his Complaint to address the deficiency. Thus, because Chambers had ample opportunity to cure this defect, the dismissal as to the claim Jackson is with prejudice.

**D. Chambers May Amend His Complaint.**

In response to the motion to dismiss, Chambers requests leave to file an amended complaint in the event the Court dismisses his claims. (Dckt. #67). The Court grants Chambers's request to amend his complaint by July 24, 2024 in a manner that is consistent with this ruling if he is able to do so. This will be Chambers final opportunity to amend his complaint.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (Dckt. #59) is granted. Chambers's claims against Jackson are dismissed with prejudice. Chambers's claims against the Village, as well as Cutia, Dexter, and Grossman, are dismissed without prejudice. Chambers may file a fourth, and final, amended complaint by July 24, 2024, and defendants are granted until August 14, 2024, to answer or otherwise plead.

**Date: July 3, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**