Foster Chambers
1173 highland Ave, Oak Park
Illinois, 60304
630-703-4216
Fchambers@52ndave.com
Plaintiff in *pro per*



FILED

7/23/2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

E.C

**BC**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FOSTER CHAMBERS,**
**Plaintiff,**

        **Case No.: 1:22-cv06008**

**Vs.**

        **PLAINTIFF'S 4th**
        **AMENDED COMPLAINT**
        **7/23/24**

**VILLAGE OF OAK PARK;**
 **Defendants.**

### 1. **Introduction**

This civil rights action is brought by Plaintiff Foster Chambers against the Defendant, Village of Oak Park, for selective enforcement and discriminatory practices in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, resulting in a "class of one" equal protection claim. This case centers on the Village's persistent and discriminatory enforcement actions targeted specifically at the Plaintiff's properties, causing significant financial and operational burdens.

    1.    **Nature of the Case**: Plaintiff Foster Chambers alleges that the Village of Oak Park engaged in a pattern of selective enforcement of building codes and regulations that discriminated against his properties, while similarly situated properties were not subjected to the same level of scrutiny or enforcement actions.

    2.    **Legal Basis**: This action is brought under 42 U.S.C. § 1983, which provides a remedy for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

    3.    **Factual Basis**:
    •   Since 2019, Plaintiff's properties have been targeted for numerous citations and fines, while other similar properties have not been cited for similar violations.

- Plaintiff has received multiple citations for issues such as fences, dumpsters, porta potties, and required Cook County permits, which were not enforced on similarly situated properties.
- Specific incidents, including the discriminatory enforcement of demolition permits, fencing, porta potty placement and disparate fines for similar violations, demonstrate a clear pattern of selective enforcement against Plaintiff.

4. **Relief Sought**:
- Injunctive relief to stop selective enforcement.
- Compensation for damages incurred due to the discriminatory enforcement.
- Punitive damages for the Village's willful, malicious, and egregious conduct.

**Conclusion**

Given the ongoing and systematic nature of the discriminatory actions against the Plaintiff's properties, the statute of limitations should be tolled. The enforcement actions did not cease but continued beyond November 1, 2020, affecting multiple properties. Therefore, the Plaintiff's claims are timely, and the court should consider the full scope of the ongoing violation. Additionally, the facts presented demonstrate that there was no rational basis for the differential treatment, as similarly situated properties were not subject to the same enforcement actions.

**2. Parties**

**Plaintiff**:

- Foster Chambers, an individual residing in Oak Park Illinois, who owns multiple properties within the Village of Oak Park.

**Defendant**:

- **The Village of Oak Park**: A municipal corporation organized and existing under the laws of the State of Illinois, with its principal offices located at 123 Madison st Oak Park.

**Key Individuals Involved** (Not Named as Defendants but Relevant to the Case):

- **Stacy Dexter,** Permit Services Supervisor, who, at all relevant times, acted in her official capacity as [Title] for the Village of Oak Park.
- **Stephen Cutia,** Head of Building Dept, who, at all relevant times, acted in the official capacity as Head of Building Dept for the Village of Oak Park.
- **Tammy Grossman** Director of Development Customer Services, who, at all relevant times, acted in the official capacity as Director of Development Customer Services for the Village of Oak Park.

### 3. Jurisdiction and Venue

**Jurisdiction**:

- This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides for federal question jurisdiction in civil actions arising under the Constitution, laws, or treaties of the United States. This action arises under 42 U.S.C. § 1983, which provides a remedy for violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**Venue**:

- Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the claim occurred in this district, and the Village of Oak Park is located in this district.

### 2. Factual Background

**Plaintiff's Background:**
The plaintiff owned multiple properties within the Village of Oak Park and operated a business involving property renovations and constructions since 2016 without prior issues. Plaintiff has worked or owned properties at these locations  840 Cuyler,216 S Taylor, 1173 Highland, 1139 Highland, 1131 Elmwood, 1143 Clinton 841 Lombard, and 524 N Cuyler. Prior to beginning work within the Village of Oak Park, the plaintiff walked and inquired about the rules and procedures to obtain a permit and work in the village. Plaintiff was instructed by Village officials and was granted his first permit to work where he employed all the instructions given to him by the village he had no issues and no complaints prior to the run in with village official Cutia.

**Alleged Discriminatory Conduct:**
Beginning in 2019 and continuing nonstop to the present day, the plaintiff has experienced a targeted pattern of enforcement actions by the Village's officials, particularly Dexter, Cutia, and Grossman. These officials, in their official capacities, influenced and directed inspector actions and adjudicative results, tampered with the plaintiff's village accounts (e.g., eliminating properties from accounts or withholding notifications), and spearheaded selective enforcement actions against his properties. Notably, these officials ignored similar violations on similarly situated properties (refers to permitted projects approved and inspected by the Village of Oak Park), bypassing due process, Village codes, and Cook County requirements.(exhibit A)

**Specific Instances of Misconduct:**
- **Altercation and Threats:** After a verbal altercation at the 840 Cuyler property in late 2018, on February 6, 2019, Cutia( Exhibit B) entered the residence, telling workers, "You're not going to get paid, so no need to come back. I'm going to make sure he won't have money to pay you and he (referencing Foster Chambers) won't be able to work in this town again." Following this, Cutia issued over 10 tickets for this property alone and lobbied for harsher fines.
- **Disparate Treatment in Fines:** Stacy Dexter requested a $3,750 fine for the plaintiff's properly permitted dumpster but only a $25 fine for a Caucasian woman's company, which had not applied for a permit.(exhibit C-video)
- **Constant Surveillance and Stop-Work Orders:** The plaintiff's properties were frequently under surveillance, with 2-3 village cars driving by daily. The plaintiff received numerous stop-work orders, while similarly situated properties continued work without issue.
- **Email Correspondence:** On October 12, 2021, Steven Cutia sent an email(Exhibit D) regarding the property at 1139 Highland, stating that "Adjudication tickets are discretionary. We will not be writing an adjudication ticket at this time as not to hold up the construction progress." This statement directly contradicts the village code(Exhibit E), which mandates consistent and non-discretionary enforcement of violations (see Section 29-1-12 for Notice and Service requirements).
- **Escalation to Grossman:** After facing many delays and worsening conditions, the plaintiff went to Grossman early 2020 and detailed the discriminatory treatment he was experiencing. Grossman even called one of the witnesses and corroborated his account of the statement made by Cutia on February 6. She assured the plaintiff that such allegations were taken seriously and promised to look into the matter. However, about four days later, the plaintiff was called back into the office where Cutia and Grossman were present. Grossman stood up and said, "It's your word versus ours, and I'm sticking with my guy."
- **Adjudication Meetings:** During this time, the plaintiff attended several adjudication meetings, hoping to receive help, but to no avail. At one meeting, Cutia claimed that a stop-work order had been posted at 216 S Taylor, but neither the homeowner nor any contractor on-site saw this notice, and no ticket was written. During the adjudication meeting, the plaintiff asked for a copy of the ticket. The Village asked to table the issue and come back the following week. When they returned, the plaintiff was given a ticket dated for that week, despite it being for an alleged violation from 3-4 weeks prior. The judge dismissed the tickets and fines, leaving the plaintiff with a $250 fine instead of the $4,400 he had already paid. However, a refund for the overpaid amount was denied under Cutia's direction.
- **Lack of Notification:** During this period, the plaintiff stopped receiving tickets and notifications, often leaving him unaware of ongoing enforcement actions. This situation became so severe that a Village employee personally called him to inform him about a court date. The plaintiff, unaware of the court date, responded that he did not know and would be there as soon as possible.
- **Permit Fees and Doubling:** After some back and forth with Dexter and Cutia on getting permits issued for 1139 Highland and 524 Cuyler, on September 30, 2021, at 3:28 PM,

Cutia issued an email to Dexter and Chambers stating,(exhibit F) "Tell him what's missing on these permits, let's get them issued." On October 4, 2021, at 1:48 PM, Plaintiff emailed asking why permit fees hadn't shown up yet as nothing was marked as outstanding. After some back and forth and document resubmissions, on October 4, 2021, at 3:53 PM, Cutia responded and stated that fees should be posted. Plaintiff checked the fees and immediately noticed they were doubled. Plaintiff responded back to Cutia via email at 4:39 PM, explaining there was never a ticket written or any adjudication taken in this matter. On October 12, 2021, at 11:22 AM, Cutia and Dexter responded, stating, "Our records show that no demolition permit has been issued for this property. Our search warrant proved that the interior had indeed been altered/demolished. The ordinance requires that the permit be doubled. Adjudication tickets are discretionary. We will not be writing an adjudication ticket at this time as not to hold up the construction progress."(Exhibit D)

• **Phone Call with Cutia:** During a subsequent phone call, Cutia told Plaintiff, "I decided you are guilty, we aren't writing you a ticket. It's over." Plaintiff stated he would not be paying the fine or for the permit.

• **Fines Notification:** On November 1, 2021, Plaintiff received an email from city employee Kimberly McFarland stating, "Good Afternoon Mr. Chambers. Adjudication Records indicate that you owe $25,475.00 as of November 1, 2021. Please see the attached."(Exhibit G) Included in these fines were two tickets, each for $11,200, for a porta potty too close to the lot line, and grass being too high at 841 Lombard (bought in 2020, currently under a stop work order). The ticket was dated October 28, 2021, but it was clear this number was the result of daily fines which had multiple adjudication meetings that Plaintiff wasn't aware of because, as Cutia mentioned, they weren't writing him tickets nor sending notifications. On October 28, 2021, a letter was sent from Grossman stating they were revoking all active permits and would not do any inspections on any properties until the fines were paid, still denying Plaintiff's right before the adjudication judge.

**Obstruction and Delay in FOIA Requests**

On July 3, 2024, Plaintiff submitted an anonymous FOIA request to the Village of Oak Park, asking for the current list of tickets and fines for all his properties. This request should have been straightforward since the Plaintiff filed the case in 2022, and the law department had referenced the tickets in settlement talks and meetings with the judge at the time.

About seven days later, the Plaintiff received an extension request stating that they needed until July 18 to provide the information. On July 16, the Plaintiff received another extension request, indicating that the information would not be available until July 26, which would prevent the Plaintiff from using that information in the amended complaint. When the Plaintiff questioned the FOIA officer about the delay, she responded, "I don't know, I'm just relaying what I received from the law department."

**Pattern of Selective Enforcement:**
An analysis of FOIA requests from 2021 onwards reveals significant disparities in the enforcement of demolition permits:

- Out of 74 properties granted Village demo permits or construction permits with demo components, only 10 (13.51%) received necessary county demolition permits, while 64 (86.49%) were marked as 'No Records Responsive.'(Exhibit H)
- In 2024 alone, of the 27 properties granted Village demo permits from January 1 to April 31, only one received the Cook County demo permit(required by Village code **105.1.5 Demolitions and Moved Structures)** (exhibit), which was a property the plaintiff lost to foreclosure. All 27 properties were granted permits.(Exhibit I)

**Supporting Evidence of Selective Enforcement:**
- **Fencing:** The plaintiff has hundreds of pictures of properties without the required fencing, yet his properties were cited for this violation.(Exhibit J)
- **Dumpster Permits:** FOIA requests show that many properties did not have the required dumpster permits, yet the plaintiff was cited and fined for this.((Exhibit H)
- **Fine Discrepancies:** FOIA requests reveal that other properties did not have to pay the same fine structure for similar violations, if they paid fines at all.((Exhibit k)
- **Porta-Potty Placement:** The plaintiff has picture evidence of dozens of porta-potties placed in violation without fines, yet he was fined $11,200 for this violation.((Exhibit L)
- **1166 Cuyler:** Plaintiff had this property under contract, and on 5/26/21, it was reported that there was asbestos (see Exhibit) in the home, which would cost $12,000 to remove. After failing to agree to terms with the seller, the contract was terminated, and the home was sold the following month. The new owners began construction without obtaining the necessary permits.Over the next few months, a complete gut rehab was performed without any permits. On 10/26/21, Steve Cutia issued a stop work order. A building permit for the garage was issued on 9/30/21, and a building permit for the house was issued on 1/5/22, after all the work and drywall had been completed. Inspection results show that all rough mechanical work had been completed without inspections and had been covered. After three separate FOIA requests, it was confirmed that only one ticket was issued on 6/16/22 for conducting sidewalk work without a permit, resulting in a $300 fine. On 10/12/21, Cutia sent an email to the Plaintiff stating that work without a permit should result in a double permit fee. However, this contractor was never held to that standard. No search warrants were issued to inspect the inside of the property, even though extensive construction was taking place. (Exhibit M)

**Impact on Plaintiff's Business:**

The plaintiff was unable to step on his properties or have workers there without the required permits. The cost of asbestos remediation, necessary for these permits, ranged from $7,000 to $30,000. The delays and interference from the Village directly led to the unraveling of the plaintiff's business. Plaintiff has lost all his properties to foreclosure due to the delays. Plaintiffs credit and ability to work with investors is now also ruined because of these events, it will be years before he is able to do the same work again.

1. **Timeline of Events and Specific Incidents**:

**1173 Highland Ave (11/2016 - 3/2018)**:

- Initiated and completed a construction project without receiving any citations.

**840 S Cuyler Ave (07/2018 - Present)**:

- Commenced a project in July 2018, receiving the first ticket in August 2018. Stephen Cutia entered property and told workers "he would make sure the Plaintiff wouldnt be able to work in the village again and wouldn't be able to pay them." Since then, I have been issued 21 more citations, highlighting the targeted enforcement against this property.

**1161 Humphrey ave (/2019 - 2/2020)**:

- Property bought with investors worked on it with no issues for 4 months. Plaintiff brought in a new investor Jessica Testwuide. While she was doing her due diligence, she spoke to Stephen Cutia and he said " she should find a new contractor because the city was coming after him". Cutia later apologized to the Plaintiff in person for this interaction admitting it shouldn't have happened.

**216 S Taylor Ave (10/2019 - 2/2020)**:

- Contracted to perform work and was claimed to have started without a permit. Following an anonymous tip, the Cook County demolition board shut down the project, even though the Village had issued a permit. Subsequently, I received four tickets, and the owner expressed feeling like they were in a police state due to the continuous presence of Oak Park inspectors.

**1131 S Elmwood Ave (02/2020)**:

- After purchasing this property, I faced numerous tickets and stop work orders, stalling the project. Despite building the same structure in the same zoning area as previously approved projects, I encountered design issues imposed by the Village.

**841 N Lombard Ave (03/2020 - 04/2020)**:

- Permits issued in March 2020 were quickly followed by a stop work order in April 2020, with the Village asserting that permits were improperly obtained.

**1139 Highland Ave (06/2020 - 08/2021)**:

- Faced delays and increased permit fees, with tickets issued for various alleged violations, further stalling the project.

**1143 Clinton Ave (05/2021 - 09/2021)**:

- Received multiple tickets, including one for a temporary electric pole, which had never been cited before, delaying the project.

   **524 Cuyler Ave (04/2021 - 08/2021)**:

- Denied the right to build, with the project stalled until August 2021, despite receiving official green light permits.


   - Summary of the tickets and fines received, including dates and amounts, Provided by Village of Oak Park(as of 10/28/2021)

| Judgment Date | Citation No. | Fine Amount | Address |
|---------------|--------------|-------------|---------------------|
| 2018-09-21 | 13-41212 | 0 | 1131 S Elmwood Ave |
| 2018-09-27 | 13-18676 | 50 | 840 S Cuyler Ave |
| 2018-09-27 | 13-18679 | 100 | 840 S Cuyler Ave |
| 2018-09-27 | 13-18680 | 150 | 840 S Cuyler Ave |
| 2018-11-15 | 13-21219 | 250 | 840 S Cuyler Ave |
| 2018-11-15 | 13-21220 | 250 | 840 S Cuyler Ave |
| 2019-01-03 | 13-21361 | 50 | 840 S Cuyler Ave |
| 2019-01-03 | 13-21362 | 50 | 840 S Cuyler Ave |
| 2019-01-03 | 13-21364 | 50 | 840 S Cuyler Ave |
| 2019-02-07 | L3-21366 | 50 | 840 S Cuyler Ave |
| 2019-03-07 | 13-21365 | 3250 | 840 S Cuyler Ave |
| 2019-03-21 | L3-21363 | 50 | 840 S Cuyler Ave |
| 2019-08-08 | 13-21880 | 250 | 840 S Cuyler Ave |
| 2019-08-08 | 13-21881 | 150 | 840 S Cuyler Ave |
| 2019-08-08 | U-218t2 | 150 | 840 S Cuyler Ave |
| 2019-08-08 | 13-21883 | 0 | 840 S Cuyler Ave |
| 2019-09-05 | 13-21900 | 750 | 840 S Cuyler Ave |
| 2019-09-05 | 13-21941 | 750 | 840 S Cuyler Ave |
| 2019-11-07 | L3-21946 | 200 | 216 S Taylor Ave |
| 2019-11-07 | 13-21947 | 100 | 216 S Taylor Ave |
| 2019-11-07 | 13-21948 | 250 | 216 S Taylor Ave |
| 2019-11-07 | 13-21949 | 0 | 216 S Taylor Ave |
| 2019-11-07 | 13-21950 | 25 | 216 S Taylor Ave |
| 2019-11-07 | 13-21958 | 25 | 840 S Cuyler Ave |
| 2020-02-20 | L3-219fl | 100 | 1131 S Elmwood Ave |
| 2020-02-20 | 13-21978 | 100 | 1131 S Elmwood Ave |
| 2020-02-20 | 13-21979 | 100 | 1131 S Elmwood Ave |
| 2020-03-05 | 13-20024 | 750 | 1173 Highland Ave |
| 2020-03-12 | 13-20028 | 50 | 1131 S Elmwood Ave |
| 2020-03-12 | 13-20027 | 50 | 1131 S Elmwood Ave |
| 2020-03-12 | 13-20029 | 50 | 1131 S Elmwood Ave |

| | | | |
|---|---|---|---|
| 2020-08-12 | 13-08852 | 75 | 1131 S Elmwood Ave |
| 2020-08-13 | 13-20030 | 500 | 840 S Cuyler Ave |
| 2020-08-13 | 13-16403 | 0 | 1143 Clinton Ave |
| 2020-10-15 | 13-20035 | 500 | 841 N Lombard Ave |
| 2020-10-15 | 13-20036 | 500 | 841 N Lombard Ave |
| 2020-10-15 | 13-20037 | 500 | 841 N Lombard Ave |
| 2020-10-15 | 13-20641 | 500 | 1131 S Elmwood Ave |
| 2020-10-15 | 13-20642 | 500 | 1131 S Elmwood Ave |
| 2020-12-03 | 13-17088 | 500 | 840 S Cuyler Ave |
| 2020-12-03 | 13-17089 | 230 | 840 S Cuyler Ave |
| 2020-12-03 | 13-17090 | 250 | 840 S Cuyler Ave |
| 2020-12-03 | 13-17091 | 0 | 840 S Cuyler Ave |
| 2020-12-03 | 13-17093 | 230 | 1173 Highland Ave |
| 2020-12-03 | 13-17094 | 0 | 1173 Highland Ave |
| 2020-12-03 | 13-17095 | 230 | 1173 Highland Ave |
| 2021-02-18 | 13-19974 | 500 | 1131 S Elmwood Ave |
| 2021-02-18 | 13-19975 | 500 | 1131 Highland Ave |
| 2021-02-18 | 13-19976 | 500 | 1131 Highland Ave |
| 2021-07-08 | 13-19980 | 750 | 1131 S Elmwood Ave |
| 2021-07-08 | 13-20661 | 750 | 1131 S Elmwood Ave |
| 2021-07-08 | 13-19977 | 50 | 1139 Highland Ave |
| 2021-07-08 | 13-19978 | 50 | 1139 Highland Ave |
| 2021-08-05 | 13-20834 | 300 | 840 S Cuyler Ave |
| 2021-09-02 | 13-20702 | 50 | 1143 Clinton Ave |
| 2021-09-02 | 13-20703 | 150 | 1143 Clinton Ave |
| 2021-09-02 | 13-20704 | 250 | 1143 Clinton Ave |
| 2021-09-02 | 13-20705 | 250 | 1143 Clinton Ave |
| 2021-09-02 | U•20706 | 125 | 1143 Clinton Ave |
| 2021-09-02 | 13-20707 | 150 | 1143 Clinton Ave |
| 2021-10-28 | 13-18719 | 250 | 1173 Highland Ave |
| 2021-10-28 | 13-18721 | 500 | 1173 Highland Ave |
| 2021-10-28 | 13-18722 | 250 | 1173 Highland Ave |
| 2021-10-28 | 13-20716 | 11200 | 841 N Lombard Ave |
| 2021-10-28 | 13-20717 | 11200 | 841 N Lombard Ave |
| 2021-10-28 | L3-20718 | 800 | 1173 Highland Ave |
| | **Total** | **40935** | |

## Code Violations & Village Code

- Plaintiff has received numerous citations for alleged violations of the following sections of the Village of Oak Park Building Code:

**Construction Fences:**

- **3306.10 Adjacent to Construction:** All construction sites shall be fully enclosed with an 8 feet high barrier of chain link fence with closed selvages on top and full-height opaque fabric during all phases of the work unless approved in writing by the building official. Fence height shall be a minimum 6 feet in height on properties within residential zoning districts.

**Dumpsters:**

- **3301.3.3.2.1 Dumpsters:** The use of dumpsters or other containers for the collection of construction debris, garbage, trash, and/or litter shall require a permit if such dumpster or container is placed within the public right-of-way. A barricade with flashing light shall be erected at each end and on the street side of any dumpster or container placed in the public right-of-way.

**Demolitions and Moved Structures:**

- **105.1.5 Demolitions and Moved Structures:** To demolish or move any free-standing principal structure, coach house, garage, or other accessory structure, the responsible party must obtain a demolition permit issued by the Cook County Department of Environmental Control and a demolition permit issued by the Village.

**Permit Expiration:**

- **105.5 Expiration:** Every permit shall become invalid unless the work on the site authorized by such permit is commenced within 180 days after its issuance, or if the work authorized on the site by such permit is suspended or abandoned for a period of 180 days after the time the work is commenced.

**Porta Potty Placement:**

- **3305.1 Facilities Required:** Sanitary facilities shall be provided during construction, remodeling, renovation, or demolition activities. Sanitary facilities shall not be located closer than 10 feet to any property line and shall not be installed in any residential front yard.

**Section 109.4 Work Commencing Before Permit Issuance**

- Any person who commences work requiring a permit on a building, structure, electrical, gas, mechanical, or plumbing system before obtaining the necessary

permits shall be subject to a fee established by the building official that shall be in addition to the required permit fees. The specific penalty amounts are detailed in the Village's fee schedule, which is adopted annually by the Village Board .

**Lawn Maintenance/Landscaping:**

- **8-41-6 Penalties:** This section outlines the penalties for violating lawn maintenance/landscaping requirements. The fine for a first violation is two hundred dollars ($200.00); for a second violation is five hundred dollars ($500.00); and for a third or subsequent violation is seven hundred and fifty dollars ($750.00).

**Section 29-1-12: Notice and Service**
(a) **Notice Requirements**: All notices required to be given by this section shall be in writing and shall be given by:
1. Personal delivery;
2. Certified mail, return receipt requested;
3. First class mail;
4. Posting the notice in a conspicuous place on the property where the violation is found when the violator has failed to accept notice by the previously described methods;
5. Any other method of service permissible by law.

**Legal Arguments**

**1. Class of One Claim**

Plaintiff asserts that the Village of Oak Park engaged in selective enforcement practices that violated the Equal Protection Clause of the Fourteenth Amendment under a "class of one" theory. The Plaintiff was intentionally treated differently from others similarly situated, and there was no rational basis for this differential treatment.

**Detailed Description of Selective Enforcement**
The Village of Oak Park has engaged in a pattern of selective enforcement, targeting Plaintiff's properties for building code violations while ignoring similar or more severe violations on other properties. This pattern demonstrates a clear and intentional focus on Plaintiff's properties without a rational, legitimate government interest.

**Evidence of Selective Enforcement**
1. **Demolition Permits:**
   • Out of 74 properties granted Village demo permits or construction permits with demo components, only 10 received the necessary county demolition permits, while 64 were marked as 'No Records Responsive' (Exhibit [X]). Despite this widespread

non-compliance, Plaintiff's properties were selectively targeted for citations related to demolition permits.

- **Intentional Action:** The selective targeting of Plaintiff's properties while ignoring similar violations on other properties indicates a deliberate intent to discriminate against Plaintiff.

2. **Fence Tickets:**

- Plaintiff received multiple citations for not having fences around construction sites, while numerous other properties with similar violations were not cited (Exhibit [Y]). Photographic evidence supports this claim, showing many properties without the required fencing.

- **Intentional Action:** The consistent targeting of Plaintiff's properties for fence violations, despite widespread non-compliance by others, suggests intentional discrimination. Dexter lobbied for a $25 fine for a Caucasian woman's company for a fence violation but wanted a $3,750 fine for the Plaintiff's properly permitted dumpster, further illustrating the discriminatory intent.

3. **Porta Potty Tickets**:

- Plaintiff was fined $11,200 for porta potties placed too close to the lot line, whereas dozens of other properties with similar violations received no fines (Exhibit [Z]). Photographic evidence and FOIA requests corroborate this selective enforcement.

- **Intentional Action**: The excessive fines imposed on Plaintiff for porta potty violations, while ignoring similar violations on other properties, demonstrate an intentional focus on Plaintiff.

4. **1166 Cuyler Issue**:

- Plaintiff had this property under contract, and on 5/26/21, it was reported that there was asbestos in the home, costing $12,000 to remove. After the contract was terminated, the new owners began construction without permits, performed a complete gut rehab, and were only issued one ticket for sidewalk work without a permit (Exhibit [A]). On 10/12/21, while double charging the Plaintiff's property a block away from 1166 Cuyler, Steve Cutia sent an email stating that work without a permit required a double permit fee per Village ordinance. However, the same standard was not applied to the new owners of 1166 Cuyler, despite clear evidence from inspection results showing that extensive work had been done without permits.

- **Intentional Action**: The disparity in enforcement actions between Plaintiff's property and 1166 Cuyler, particularly given the email from Steve Cutia, indicates a deliberate and targeted effort to discriminate against Plaintiff.

5. **100+ Similarly Situated Properties**:

- In total, enforcement actions across 100+ similarly situated properties were not subject to the same stringent enforcement as the Plaintiff's properties. These similarly situated properties were not cited for similar violations, further illustrating the lack of consistency and uniform application in the Village's enforcement actions.

- **Intentional Action**: The selective enforcement against Plaintiff while ignoring similar violations on 100+ other properties demonstrates an intentional and discriminatory pattern of behavior.

6. **Grossman's Failure to Investigate**:
   - After Plaintiff detailed the discriminatory treatment to Tammy Grossman, she initially assured that such allegations were taken seriously. However, she later dismissed the Plaintiff's claims, stating "It's your word versus ours, and I'm sticking with my guy," and failed to investigate the confirmed misconduct on February 6, 2019.
   - **Intentional Action**: Grossman's failure to investigate clear and confirmed cases of misconduct indicates an intentional disregard for the Plaintiff's rights and supports the claim of intentional discrimination.

## Comparative Analysis

A comparative analysis of fines and permit fees reveals significant disparities. Plaintiff's property at 1139 Highland Ave faced increased permit fees and numerous citations, while similar properties like 1166 Cuyler in the same area with identical violations were not cited.

In total, enforcement actions across 100+ similarly situated properties were not subject to the same stringent enforcement as the Plaintiff's properties. These similarly situated properties were not cited for similar violations, further illustrating the lack of consistency and uniform application in the Village's enforcement actions. This inconsistency further supports the lack of a rational basis for the enforcement actions against Plaintiff's properties.

## Role of Key Individuals:

Village officials, including Dexter, Cutia, and Grossman, have been instrumental in this selective enforcement. Acting in their official capacities, their actions and decisions significantly contributed to the discriminatory enforcement against Plaintiff's properties.

## Supporting Case Law:

The Equal Protection Clause prohibits selective enforcement based on impermissible considerations. In *Village of Willowbrook v. Olech*, the U.S. Supreme Court recognized that plaintiffs could bring a "class of one" equal protection claim by showing they were intentionally treated differently from others similarly situated without a rational basis for the difference in treatment (528 U.S. 562, 564 (2000)) . Similarly, in *Yick Wo v. Hopkins*, the Court invalidated an ordinance applied discriminatorily against Chinese laundry owners, emphasizing that the administration of a law can violate equal protection if it is "so unequal and oppressive" (118 U.S. 356, 373 (1886)) . Additional cases such as *White Egret Condominium, Inc. v. Franklin* (379 So. 2d 346 (Fla. 1979)) support the idea that selective enforcement violates equal protection when similar violations are treated differently without a rational basis .These cases support the claim that selective enforcement targeting Plaintiff's properties constitutes a violation of equal protection.

## 2. Rational Basis Review
## Inconsistency in Enforcement:

The selective enforcement actions taken against Plaintiff's properties lack a rational basis, as evidenced by the inconsistent application of building codes and regulations. For example,

Plaintiff's property at 841 N Lombard Ave was issued a stop work order on 10/28/2021 and fined $11,240 for porta potty to close to the lot line, while other properties in the same area with similar placement of their toilet continued their projects without interruption or fine this continues even up to today.

**Rational Basis Argument:**

Any rational reason or legitimate government interest the Village had for enforcing violations on Plaintiff's properties would logically extend to all similarly situated properties as the codes and regulations are there for the safety and well being of everyone. It is not rational to require one property to follow the rules while allowing ten other properties doing the exact same thing to follow a different set of rules. The evidence shows that other properties were not cited for similar violations, which negates any rational basis the defendants can claim for selectively targeting Plaintiff's properties. The Village's actions and statements clearly indicate an attempt to conceal an irrational or illegal motive behind a facade of legitimate government interests.

The Village's selective enforcement actions appear to be rational on the surface but are actually designed to target the Plaintiff specifically. By citing rational events or regulations, such as the need for demolition permits or safety fencing, the Village masks its true, discriminatory intent. This pattern of hiding irrational motives behind ostensibly rational enforcement actions undermines the legitimacy of their claims and reveals a deeper, unlawful bias against the Plaintiff.

**Evidence from FOIA Requests:**

The FOIA requests demonstrate a clear pattern of selective enforcement:

- **Demolition Permits**: Out of 74 properties granted Village demo permits or construction permits with demo components, only 10 received the necessary county demolition permits, while 64 were marked as 'No Records Responsive.' Despite this widespread non-compliance, Plaintiff's properties were selectively targeted for citations related to demolition permits.
- **Fence Tickets**: Plaintiff received multiple citations for not having fences around construction sites, while numerous other properties with similar violations were not cited. Photographic evidence supports this claim, showing many properties without the required fencing.
- **Porta Potty Tickets**: Plaintiff was fined $11,200 for porta potties placed too close to the lot line, whereas dozens of other properties with similar violations received no fines. Photographic evidence and FOIA requests corroborate this selective enforcement.
- **1166 Cuyler Issue**: Plaintiff had this property under contract, and on 5/26/21, it was reported that there was asbestos in the home, costing $12,000 to remove. After the contract was terminated, the new owners began construction without permits, performed a complete gut rehab, and were only issued one ticket for sidewalk work without a permit. On 10/12/21, while double charging the Plaintiff's property a block away from 1166 Cuyler, Steve Cutia sent an email stating that work without a permit required a double permit fee as per Village

ordinance. However, the same standard was not applied to the new owners of 1166 Cuyler, despite clear evidence from inspection results showing that extensive work had been done without permits.

**Comparative Analysis:**
A comparative analysis of fines and permit fees reveals significant disparities. Plaintiff's property at 1139 Highland Ave faced increased permit fees and numerous citations, while similar properties in the same area with identical violations were not cited. For example, at 1166 Cuyler, a complete gut rehab was conducted without permits, and only one minor ticket was issued months later. This inconsistency further supports the lack of a rational basis for the enforcement actions against Plaintiff's properties.

 In total, we've identified 100+ similarly situated properties(exhibit A) that were not subject to the same stringent enforcement as the Plaintiff's properties. These similarly situated properties were not cited for similar violations, further illustrating the lack of consistency and uniform application in the Village's enforcement actions. This inconsistency further supports the lack of a rational basis for the enforcement actions against Plaintiff's properties.

**Supporting Case Law:**
The rational basis review requires that government actions be rationally related to a legitimate government interest. In Freeman v. City of Santa Ana, the Ninth Circuit held that plaintiffs could demonstrate that a government's rational basis for selectively enforcing a law was a pretext for an impermissible motive (68 F.3d 1180, 1187-88 (9th Cir. 1995)). This means that if selective enforcement lacks consistency and is not applied uniformly, it undermines the rational basis argument. The evidence of selective enforcement regarding demolition permits, fence tickets, porta potty tickets, and the 1166 Cuyler issue clearly shows a lack of consistency and uniform application, indicating that the Village's actions are a pretext for an impermissible motive.

### 3. Continuing Violation Doctrine

The Plaintiff asserts that the discriminatory enforcement actions by the Village of Oak Park and its officials constitute a continuing violation, which should toll the statute of limitations. The ongoing and systematic nature of the selective enforcement actions demonstrates a continuous pattern of behavior that extends beyond isolated incidents.

**Plaintiff's Awareness**
The Plaintiff was initially unaware of the full extent of the wrongful actions and the appropriate recourse due to the covert nature of the discriminatory enforcement and the Village's misrepresentations. The Plaintiff's lack of awareness further supports the application of the continuous violation doctrine and equitable tolling. The Plaintiff did not realize the pattern of discrimination or the proper legal recourse until the repeated nature of the actions became evident over time.

**Ongoing Pattern of Discriminatory Enforcement:**
Since 2019, Plaintiff has faced continuous and targeted enforcement actions. The pattern of issuing citations, fines, and other discriminatory actions did not cease but continued unabated up to the present day. Each act of enforcement was part of a broader, ongoing campaign of harassment and discrimination against the Plaintiff.

**Discrete Acts as Part of the Continuing Violation:**
While each citation or fine may be viewed as a discrete act, they collectively form a continuous pattern of discriminatory enforcement. This ongoing pattern is essential to understanding the full extent of the violation and its impact on the Plaintiff. Isolating each act disregards the cumulative effect and the systematic nature of the Village's actions
 The following examples illustrate the ongoing nature of the discriminatory enforcement:

**Timeline Demonstrating Continuous Violation (also see list of fines Exhibit )**

**Timeline of Key Events and Citations:**
1. **February 6, 2019:**
   • **Event:** Stephen Cutia enters the 840 Cuyler property, threatens workers, and indicates a targeted effort to disrupt Plaintiff's business.
   • **Significance:** Marks the beginning of the pattern of harassment and selective enforcement.
2. **August 2018 - Present:**
   • **Event:** Property at 840 S Cuyler Ave cited 21 times.
   • **Significance:** Demonstrates ongoing enforcement actions targeting Plaintiff's properties.
3. **November 1, 2020:**
   • **Statute of Limitations Cutoff:** Any claims accruing before this date are generally barred unless part of a continuing violation. Received 27 more tickets as of 10-28-21 on 5 out of the 6 properties owned by the plaintiff.
4. **October 12, 2021:**
   • **Event:** Steven Cutia emails about discretionary adjudication tickets for the property at 1139 Highland.
   • **Significance:** Part of the ongoing pattern of selective enforcement and inconsistent application of Village codes.
5. **September 30, 2021 - October 4, 2021:**
   • **Event:** Permit fees for 1139 Highland and 524 Cuyler are doubled without due process, and adjudication tickets are deemed discretionary.
   • **Significance:** Continues the pattern of discriminatory actions, contributing to the ongoing violation.
6. **November 1, 2021:**

- **Event:** Plaintiff receives an email from Kimberly McFarland stating an outstanding amount of $25,475.00 in fines, including daily fines for a porta potty and uncut grass at 841 Lombard.
- **Significance:** Demonstrates the continued imposition of fines and penalties without proper notification, part of the continuous discriminatory practice.

7. **October 28, 2021:**
   - **Event:** Tammy Grossman sends a letter revoking all active permits and stating no inspections would be conducted until fines were paid.
   - **Significance:** Further evidence of the ongoing nature of the discriminatory actions.

8. **January 1, 2024 - April 31, 2024:**
   - **Event:** Out of 27 properties granted village demo permits, only one recieved the Cook County demo permit, a property Plaintiff lost to foreclosure.
   - **Significance:** Illustrates ongoing discrepancies in permit enforcement, continuing the pattern of selective enforcement.

**Supporting Case Law:**

The continuous violation doctrine allows plaintiffs to seek redress for ongoing discriminatory actions, extending the statute of limitations. In **Havens Realty Corp. v. Coleman**, the U.S. Supreme Court held that a continuing violation can toll the statute of limitations if the plaintiff can show that the unlawful practice continued into the statutory period (455 U.S. 363, 380 (1982)). Similarly, in **National Railroad Passenger Corp. v. Morgan**, the Court held that for claims involving a series of related acts, the entire time period of the alleged conduct can be considered, as long as one act falls within the filing period (536 U.S. 101, 117 (2002)).

**Summary:**

The pattern of discriminatory enforcement actions by the Village of Oak Park and its officials has been continuous and unbroken since 2018. This ongoing conduct, characterized by repeated citations, fines, and other discriminatory actions selectively enforced against the Plaintiff only, should toll the statute of limitations under the continuing violation doctrine. The Plaintiff has filed this complaint within two years of the latest discriminatory actions, making the claims timely.

**4. Tolling the Statute of Limitations:**

Given the ongoing nature of these discriminatory actions, the statute of limitations should be tolled. Each citation and fine issued as part of this continuous pattern renews the violation, thereby extending the period within which legal action can be taken.

**Supporting Case Law:**

The continuing violation doctrine allows plaintiffs to seek redress for ongoing discriminatory actions, extending the statute of limitations. In *Havens Realty Corp. v. Coleman*, the U.S. The

Supreme Court held that a continuing violation can toll the statute of limitations if the plaintiff can show that the unlawful practice continues into the statutory period (455 U.S. 363, 380 (1982)) .

### 5. Equitable Tolling
**Efforts to Resolve Issues:**
Plaintiff has made numerous efforts to resolve these issues through the Village's adjudication process and settlement talks. During these sessions Adjudication judges told the plaintiff " they couldn't  handle that stuff(when referencing treatment and statements), I can only deal with what's in front of me. This isn't the place for that." Despite these efforts, the discriminatory enforcement actions have continued unabated.

**Settlement Discussions:**
Plaintiff hired two lawyers to engage in settlement discussions with the Village in an attempt to resolve these issues out of court. These settlement efforts demonstrate Plaintiff's good faith attempt to address the problems without resorting to litigation.

**Impact of COVID-19 Pandemic:**
The COVID-19 pandemic, and the associated lockdowns and disruptions beginning in March 2020, significantly affected the Plaintiff's ability to address the ongoing discriminatory enforcement actions by the Village of Oak Park. The pandemic created extraordinary circumstances that warrant the equitable tolling of the statute of limitations.

**Justification for Equitable Tolling:**
The time and resources spent attempting to resolve the issues through the Village's adjudication process and settlement talks justify equitable tolling of the statute of limitations. Plaintiff's diligent efforts to settle the matter amicably should be taken into account, and the statute of limitations should be tolled accordingly.

**Supporting Case Law:**
Equitable tolling allows for the extension of the statute of limitations when a plaintiff has diligently pursued their rights but was prevented from filing due to extraordinary circumstances. In *Pace v. DiGuglielmo*, the U.S. Supreme Court stated that equitable tolling is appropriate when the plaintiff has been pursuing their rights diligently and some extraordinary circumstance stood in their way (544 U.S. 408, 418 (2005)) .

**Detailed Description of Selective Enforcement:**
**Specific Instances of Misconduct:**
 • **Altercation and Threats:** On February 6, 2019, Steven Cutia threatened workers at 840 S Cuyler Ave, indicating a targeted effort to disrupt Plaintiff's business.
 • **Disparate Treatment in Fines:** Stacy Dexter imposed a $3,750 fine on Plaintiff's properly permitted dumpster, while only fining another individual $25 for the same violation without permits.

- **Constant Surveillance and Stop-Work Orders:** Plaintiff's properties were subjected to excessive surveillance and stop-work orders, unlike similarly situated properties.
- **Email Correspondence:** On October 12, 2021, Cutia stated that "adjudication tickets are discretionary," contradicting the principle that enforcement should be consistent (see Section 29-1-12 for Notice and Service requirements).

**Supporting Evidence of Selective Enforcement:**
- **Fencing and Dumpster Permits:** FOIA requests and photographic evidence show that many properties without the required fencing or dumpster permits were not cited, while Plaintiff's properties were.
- **Fine Discrepancies and Porta-Potty Placement:** Disparities in fines and permit fees, along with evidence of unpenalized porta-potty violations on other properties, further support Plaintiff's claim.

**Impact on Plaintiff's Business:**
The enforcement actions led to significant financial burdens, including asbestos remediation costs and delays, directly contributing to the unraveling of Plaintiff's business.

**Exhibit:**
The properties that received permits and those that did not are listed in Exhibit [X]. Additionally, photos of similarly situated properties without required fences, FOIA results showing discrepancies in fines and permits, and other evidence substantiate Plaintiff's claims.


6. **Relief Sought**
The Plaintiff seeks the following relief from the Court:
1. **Injunctive Relief:**
   - An injunction to immediately halt the Village of Oak Park's selective enforcement practices against the Plaintiff's properties.
   - An order requiring the Village of Oak Park to apply enforcement of its codes and regulations uniformly and consistently to all properties, ensuring no further discriminatory treatment towards the Plaintiff.

2. **Compensation for Damages:**
   - Compensation for financial losses incurred due to the discriminatory enforcement practices, including but not limited to:
     - Lost Business Opportunities and Profits: $5,000,000 - The Plaintiff's business suffered severe financial losses due to foreclosed projects, estimated at $5 million in lost revenue and profit margins.

     - Damages for Harm to Business Reputation and Personal Creditworthiness: $5,000,000 - The Plaintiff's business reputation and personal creditworthiness have been severely damaged, impacting the ability to secure future business and financial stability. Plaintiff can no longer get financing or operate his business. All projects were financed and had full loans for property and rehab work. Plaintiff can no longer get a loan to do business, even if this

lawsuit is successful the plaintiff no longer has access to funding due to the record of what happened to his properties..

.
- The total amount of compensatory damages sought is $10,000,000.

4. **Punitive Damages:**
- An award of punitive damages in the amount of $3,000,000 to punish the Village of Oak Park for its willful, malicious, and egregious conduct in selectively enforcing its codes and regulations against the Plaintiff, and to deter similar conduct in the future. The Village's actions demonstrated a reckless disregard for the Plaintiff's rights and caused significant harm to the Plaintiff's business and personal reputation.

**Conclusion**

In conclusion, the Plaintiff, Foster Chambers, has been subjected to a continuous and systematic pattern of discriminatory enforcement actions by the Village of Oak Park and its officials since 2019. These actions have caused significant financial and operational burdens on the Plaintiff's business, violating the Equal Protection Clause of the Fourteenth Amendment. The ongoing nature of these violations justifies the application of the continuing violation doctrine, tolling the statute of limitations.

The Plaintiff has presented substantial evidence of selective enforcement, including disparities in fines, permit fees, and citations compared to similarly situated properties. The impact of the COVID-19 pandemic further hindered the Plaintiff's ability to address these violations in a timely manner, warranting equitable tolling.

Given the facts and legal arguments presented, the Plaintiff respectfully requests that the Court grant the relief sought, including injunctive relief to stop the selective enforcement, compensation for the damages incurred totaling $10,000,000, and punitive damages totaling $3,000,000. The Plaintiff seeks justice and fair treatment under the law, ensuring that the discriminatory practices by the Village of Oak Park cease immediately.

Dated on this 23rd day of July,2024

Respectfully Submitted,

_____

Foster Chambers,
Plaintiff in Pro Per

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1. On 7/23/24, the foregoing Plaintiff's 4th Amended Complaint was electronically filed with the District Court Clerk via CM/ECF filing system, sending service to:

Paul L. Stephanides
Village Attorney
Village of Oak Park
123 Madison Street
Oak Park, Illinois 60302
(708) 358-5660 – Phone
(708) 358-5106 – Fax
pstephanides@oak-park.us

2. Pursuant to Fed. R. Civ. P. 5, the undersigned certified that, to his best information and belief, there are no non-CM/ECF participants in this matter.

Dated this July 23rd, 2024.

Respectfully Submitted,

_____

Foster Chambers,
Plaintiff in pro per



DocuSign Envelope ID: 10452F89-120D-49F8-89F0-B599B19FD742

# IN THE CIRCUIT COURT
# IN THE UNITED STATES DISTRICT COURT IN AND FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION
## Cook County, Illinois

| | |
|---|---|
| Foster Chambers<br>**Plaintiff**<br>-vs-<br>Village of Oak Park, Tammi Grossman, Steven Cutia, Kevin Jackson, and Stacey Dexter<br>**Defendant** | Case No.: 1:22-cv06008 |

## <u>AFFIDAVIT</u>

I, Luis Navarro, of Chicago, in Cook County, Illinois, being duly sworn, deposes and affirm upon oath:

**1.** On the February 6th 2019 sometime between 3-4pm csd Chief building inspector Steven Cutia entered the residence at 840 Cuyler in Oak Park Illinois. I was working with my partner Rafa when Mr. Cutia approached us and said exactly" we needed to leave", he asked me if we we had been paid I said Foster owes us around $900 right now". Mr. Cutia then said " your def not going to get paid so no need to come back, Im going to make sure he wont have money to pay you and he(referencing Foster Chambers) wont be able to work in this town again. " I asked who are you and Mr. Cutia handed me his card. I then packed up texted called Foster Chambers we have an emergency with a pic of the card. Foster called me back and I explained what had just happened I told him "this guy is out to bankrupt you", Foster asked did he say that I responded "yeah he said your not going to work again"

I was called a few later by Foster said he was meeting with Mr. Cutia's Boss and he wanted me to tell her what was said. Foster called me from his phone maybe 20 mins later and a woman who identified herself as Tammi Grossman proceeded to ask me questions about that day and what was said. I told her that " Mr. Cutia said "he was basically going to Bankrupt Foster and we should leave, we werent getting paid", she thanked me foster thanked me and they hung up.

DocuSign Envelope ID: 10452F89-120D-49F8-89F0-B599B19FD742

I had not heard from Foster(besides random text here and there) or worked for him from that point on until he called me on Jan 6th 2022 asking if i remembered what happened and if i was willing to sign an affidavit. I said "yes" Foster asked "what did he say again " I said he said he was going to make sure you couldnt pay us". Foster asked" to be clear did he say the words Bankrupt" I said " No i was paraphasing" Foster asked What did he say exactly " I proceeded to tell Foster he said he was going to make sure Foster wasn't going to pay us the $900, we should and that he was going to make sure Foster doesn't work in Oak Park again" Foster said " Woooooooooow I cant believe that, send me your email so i can send you the affidavit to sign" I replied "yea man it was crazy" , and texted Foster my email

.

**2.** At no point has Foster offered me me any kind of compensation for my statement, nor have I asked for any kind of compensation. This statement was not rehearsed or fabricated as it is a true retelling of event that transpired on Feb 6th 2019. .

**STATE OF ILLINOIS**
**COUNTY OF COOK**

SUBSCRIBED TO AND SWORN BEFORE
ME, this _____.

Signature _____ (Seal)
NOTARY PUBLIC
My Commission expires: _____

(Signature)

Luis Navarro

# IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **FOSTER CHAMBERS** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **Case No.** 1:22-cv-06008 |
| | § | |
| **VILLAGE OF OAK PARK; TAMMY** | § | |
| **GROSSMAN; KEVIN JACKSON;** | § | |
| **STACY DEXTER;** and **STEVE CUTIA** | § | |
| Defendants. | § | |

## AFFIDAVIT
_____ County, Illinois

I, Myron Robinson, Rockford, Illinois, being duly sworn, deposes and affirm upon oath:                                   **Text**

1. On the February 6th 2019 sometime between 3-4pm csd Chief building inspector Steven Cutia entered the residence at 840 Cuyler in Oak Park Illinois. I was working in the basement going over plumbing plans when an inspector could be heard telling the guys upstairs " They needed to leave", the inspector asked if they had been paid I heard him respond they were owed $800-$900. The inspector could be heard saying " your not going to get paid so no need to come back, I'm making  sure he won't have money to pay you and he (Foster Chambers) won't work in this town again. The guy upstairs asked "Who are you" after a couple minutes I heard the inspector say again "everyone leave, I'm shutting this done" he walked out and I could hear the guys packing up and the guy yell to his partner "we might not be coming back, that Inspector said he's going to fuck Foster business up, what the fuck, I'm calling him now". I walked upstairs looked out the window and could see the white guy visibly angry on his cell phone and he said "leaving Chambers project now, He's DONE, shut this and anything else he has down, I want him GONE" there was business card left on the wall from Steven Leo Cutia Chief Building Official.  I don't know who the Inspector was speaking to. I worked with Foster on other jobs and at each one several city cars would drive by slowly every day. I remember one owner on a job saying" he hasn't seen this many village cars the whole 20 years he lived there".  Their presence made him uneasy. That owner would ask guys if they'd been paid and if they were licensed with the city. I believe that was a contributing factor to that owner not trusting Foster and falling out with him.

2. At no point has Foster offered me any kind of compensation for my statement, nor have I asked for any kind of compensation. This statement was not rehearsed or fabricated as it is a true retelling of event that transpired on Feb 6th 2019 & and various other projects I worked with Foster Chambers in Oak Park.

## **CERTIFICATION PURSUANT TO SECTION 1-109**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil

Procedure, the undersigned certifies that the statements set forth in this instrument are

true and correct, except as to matters therein stated to be on information and belief and as

to such matters the undersigned certifies as aforesaid that [he/she/it/they] verily believes

the same to be true.

_____

Myron Robinson            Date

STATE OF ILLINOIS
COUNTY OF COOK
SUBSCRIBED TO AND SWORN BEFORE

ME, this _____.

Signature _____ (Seal)
NOTARY PUBLIC

My Commission expires: _____

From: **Cutaia, Steven** scutaia@oak-park.us
Subject: 1139 highland
Date: October 12, 2021 at 11:22 AM
To: foster chambers fchambers@52ndave.com
Cc: Dexter, Stacy sdexter@oak-park.us

Dear Mr Chambers,

Our records show that no demolition permit has been issued for this property. Our search warrant proved that the interior had indeed been altered/demolished. The ordinance requires that the permit be doubled. Adjudication tickets are discretionary. We will not be writing an adjudication ticket at this time as not to hold up the construction progress.

Please see Stacy(cc'd) for the pending HVAC contractor registration, which is the only item remaining on issuing this permit. Thanks

Respectfully,

# Steve Cutaia


**From:** foster chambers <fchambers@52ndave.com>
**Sent:** Tuesday, October 12, 2021 9:43 AM
**To:** Permits <Permits@oak-park.us>
**Subject:** 1143 Clinton & 1139 highland

**WARNING**- **EXTERNAL EMAIL:** If unknown sender, do not click links/attachments. Never give out your user ID or password.


Clinton: new demo permit has been issued.

Highland:
What is happening with highland I was never given a ticket for this or had this adjudicated which is my right. Now your wasting my time when the fee should be reduced until the outcome of the said adjudication. We both know y'all don't have issues stopping work for no reason so if I owed fines after I'm sure something like that would happen.
--
Foster Chambers
52nd Ave LLC
Chicago, Illinois
(c) 773.240.0710
www.52ndave.com
"Dreams don't die, We stop chasing them"

Inline image

connection with the: 1) subject matter, and 2) facts which are relevant to the case and relate to a contested issue in the case. A party's request to an Administrative Law Judge for a subpoena must be timely. Service of subpoenas shall be made in the same manner as summons in a civil action.

B. Content: A subpoena issued under this chapter shall identify:

1. The person to whom it is directed;

2. The documents or other items sought by the subpoena, if any; and

3. The date, time, and place for the appearance of the witnesses and the production of the documents or other items described in the subpoena.

C. Appearance: The date identified for the appearance of the witnesses or the production of the documents or other items shall not be less than seven (7) days after service of the subpoena.

D. Contesting A Subpoena: Within three (3) business days of being served with a subpoena issued in accordance with this chapter, the person or entity to whom the subpoena is directed may contest the issuance of the subpoena by filing a written motion with the Office of Adjudication, and with proper notice to all parties. The motion shall specify the grounds therefor, and shall be heard by an Administrative Law Judge on the return date indicated on the subpoena, or at the next hearing date scheduled for the case, whichever occurs earlier. (Ord. 2003-0-42, 10-7-03)

## 29-1-11: ADMINISTRATIVE HEARINGS:

A. All administrative hearings conducted pursuant to this chapter shall be open to the public and shall be presided over by a duly appointed Administrative Law Judge who is charged with providing the parties a full and fair opportunity to be heard.

B. All administrative hearings shall be conducted on the date set for hearing. For good cause shown, a case may be continued at the discretion of the Administrative Law Judge. The purpose of administrative hearings is to provide a prompt resolution of alleged code violations. Accordingly, the grant of continuances shall be limited. Lack of preparation shall not be grounds for a continuance.

C. In-Person, Mail, Online Or Remote Hearings:

1. The formal and technical rules of evidence shall not apply in the conduct of the hearing. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs.

2. Hearings may be conducted on an in-person basis, by remote electronic means or by mail or online pursuant to section 29-2-7 of this Code, as amended. Remote electronic hearings shall be conducted pursuant to rules and regulations promulgated by the Director of the Office of Adjudication. Notice of a remote electronic hearing shall be provided to the respondent as required by this article.

3. Upon the request of any party to a proceeding or by an Administrative Law Judge, the Administrative Law Judge may order that proceeding designated to be conducted by remote electronic means shall be conducted in-person when doing so is necessary or efficient to protect the rights of any party and can be accomplished without compromising the safety of the proceedings and its participants.

D. No violation may be established except upon proof by a preponderance of the evidence, provided, however, that the original or a legible copy of the charging document, issued in accordance with the applicable provisions of this code, shall be prima facie evidence of the correctness of the facts specified therein.

E. No agent or employee of the Office of Adjudication shall represent the Village or present evidence or testimony at an adjudicatory hearing. Provided, however, documentary evidence, prepared by another Department of the Village and submitted to the Office of Adjudication, may be presented at the hearing by the Administrative Law Judge. This section does not preclude employees or agents of the Village of Oak Park, other than employees of the Office of Adjudication, from appearing at a hearing or presenting evidence.

F. Parties to an adjudicatory hearing may be represented by an attorney, present witnesses, and cross examine opposing witnesses. Parties may request the Administrative Law Judge to issue subpoenas as provided for in section 29-1-10 of this article.

G. The Administrative Law Judge may question witnesses and elicit testimony in order to determine whether the respondent is liable for the charged violation.

H. A record of all hearings shall be kept. The record shall be preserved in such form and manner as determined by the Director. Such preservation may be made by tape recording or other appropriate means. Recording by any means by any member of the public is prohibited unless expressly authorized by the Director. The record of all hearings before an Administrative Law Judge shall include: 1) a record of the testimony presented at the hearing; 2) all documents, exhibits, and other physical evidence presented at the hearing and admitted into evidence; 3) a copy of the notice of violation and notice of hearing; and 4) a copy of the Administrative Law Judge's findings, decision, and order. Any party may request that the proceedings be taken and transcribed by a certified court reporter. The cost of the court reporter shall be borne by the party requesting the court reporter. If the Village makes a tape recording of the proceedings, the respondent may obtain a transcript at his or her own cost.

I. At the conclusion of a hearing, the Administrative Law Judge shall issue a final determination. If the Administrative Law Judge determines that the respondent is liable for the violation, he or she may impose fines, assess costs, and make all orders authorized by section 29-1-9 of this article.

J. At the conclusion of the hearing, the Administrative Law Judge shall inform the parties orally and in writing of the determination, which determination shall constitute a final determination for purposes of judicial review. The Administrative Law Judge also may dismiss the case with or without prejudice on a properly made motion by the Village.

K. Final determinations of an Administrative Law Judge are subject to review under the Illinois Administrative Review Law. (Ord. 2003-0-42, 10-7-03; amd. Ord. 20-171, 7-6-2020)

All matters to be adjudicated by the Office of Adjudication shall be commenced against the party alleged to have violated one or more code provision(s) by issuing and serving upon that party a charging document in accordance with the following procedures:

A. The form and manner of service of a charging document for a vehicular parking, compliance or standing violation shall be as provided in article 2 of this chapter.

B. 1. The charging document for a violation of any provision of this code subject to the system of administrative adjudication provided in this chapter, other than vehicular standing, parking and compliance violations, shall be issued by a Village officer or employee authorized to exercise code enforcement authority, and served as provided for in subsection 29-1-12C of this section.

The charging document shall contain the following information:

a. The name, Village Department, and identification number, if applicable, of the person issuing the charging instrument;

b. The name and address of the person or entity being charged with the violation;

c. The name and address of the person to whom the charging document is given if that person is not the respondent;

d. The section(s) of the code alleged to have been violated;

e. The date, time, and place of the alleged violation(s);

f. A legally sufficient description of the activity or conduct alleged to constitute a violation of each code section set forth in the charging document or a legally sufficient description of the facts giving rise to the allegations set forth in the charging document;

g. The complaining witness's name may be included if the violation is witnessed by someone other than a Village officer or employee.

The Village officer or employee shall certify the correctness of the information required by this subsection 29-1-12B1 by signing his or her name to the charging document to be issued. Charging documents which comply with this subsection 29-1-12B1 will be sufficient to establish a prima facie case of liability for the code violation charged.

2. A charging document issued pursuant to subsection 29-1-12B1 of this section also shall set forth: a) the date, time and place of the adjudication hearing to be held with respect to the violation, and b) the legal authority and jurisdiction under which the hearing will be held.

C. 1. The respondent named in a charging document shall be served with notice of the violation, and with any other notices required in this article in one of the following

From: **Cutaia, Steven** scutaia@oak-park.us
Subject: RE: PRROW202104056, 524 cuyler ,1139 highland
Date: September 30, 2021 at 3:28 PM
To: Permits Permits@oak-park.us
Cc: foster chambers fchambers@52ndave.com

Stacy,
Please call him and explain what is lacking on these two permits, let's get these issued.
Respectfully,

# Steve Cutaia

**From:** foster chambers <fchambers@52ndave.com>
**Sent:** Thursday, September 30, 2021 9:35 AM
**To:** Permits <Permits@oak-park.us>
**Subject:** PRROW202104056, 524 cuyler ,1139 highland

WARNING- EXTERNAL EMAIL: If unknown sender, do not click
links/attachments. Never give out your user ID or password.

PRROW202104056
This permit wasn't given in enough I had to yet again change the dates but the dates are
now corrected so what's the excuse for not having issued this.

524 cuyler
Everyone's submitted everything and everyone's paid  again what is the excuse for not
issuing this

1139 highland
Everyone's submitted everything and everyone's paid  again what is the excuse for not
issuing this.

I emailed yesterday about this with no response what is going on.
--
Foster Chambers
52nd Ave LLC
Chicago, Illinois
(c) 773.240.0710
www.52ndave.com
"Dreams don't die, We stop chasing them"

Inline image

**Exhibit H**

| FOIA Request ID | Date | Property Address | Status |
|---|---|---|---|
| R004641-061224 | 06/12/24 | 321 N East Ave | No Records Responsive |
| R004641-061224 | 06/12/24 | 928 S Lyman Ave | No Records Responsive |
| R004533-052024 | 05/20/24 | 520 Harvey Ave | No Records Responsive |
| R004533-052024 | 05/20/24 | 532 Harvey Ave | No Records Responsive |
| R004530-052024 | 05/20/24 | 520 Harvey | No Records Responsive |
| R004530-052024 | 05/20/24 | 534 Harvey | No Records Responsive |
| R004406-042424 | 04/24/24 | 1139 Highland Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 1118 N Austin Blvd | No Records Responsive |
| R004400-042324 | 04/23/24 | 931 Chicago Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 1109 Highland Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 401 South Blvd | No Records Responsive |
| R004400-042324 | 04/23/24 | 611 Clinton Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 412 Clinton Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 806 Highland Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 604 Wesley Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 1139 Highland Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 211 N Marion St | No Records Responsive |
| R004400-042324 | 04/23/24 | 1111 South Blvd | No Records Responsive |
| R004400-042324 | 04/23/24 | 131 N Taylor Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 400 N Scoville Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 710 Fair Oaks Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 719 N Marion St | No Records Responsive |
| R004400-042324 | 04/23/24 | 1150 S Elmwood Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 830 Woodbine Ave | No Records Responsive |
| R004400-042324 | 04/23/24 | 842 Washington Blvd #G | No Records Responsive |
| R002110-091222 | 09/12/22 | 1108 S Cuyler | Granted |
| R002110-091222 | 09/12/22 | 1154 Elmwood | No Records Responsive |
| R002110-091222 | 09/12/22 | 1122 Elmwood | No Records Responsive |
| R002110-091222 | 09/12/22 | 934 Gunderson | No Records Responsive |
| R002110-091222 | 09/12/22 | 1140 Gunderson | No Records Responsive |
| R002110-091222 | 09/12/22 | 1120 Wesley | No Records Responsive |
| R002110-091222 | 09/12/22 | 1021 Wesley | No Records Responsive |
| R002110-091222 | 09/12/22 | 1015 Wesley | No Records Responsive |
| R002110-091222 | 09/12/22 | 935 Kenilworth | No Records Responsive |
| R002110-091222 | 09/12/22 | 927 Grove | Granted |
| R002110-091222 | 09/12/22 | 944 Grove | No Records Responsive |
| R002110-091222 | 09/12/22 | 946 Grove | No Records Responsive |
| R002110-091222 | 09/12/22 | 937 Clinton | No Records Responsive |
| R002110-091222 | 09/12/22 | 1038 Wisconsin | No Records Responsive |
| R002110-091222 | 09/12/22 | 1108 Maple | granted |
| R002533-011523 | 01/15/23 | 1108 S Maple | granted |
| R002533-011523 | 01/15/23 | 1030 S Home | granted |

| | | | |
|---|---|---|---|
| R002533-011523 | 01/15/23 | 944 S Clinton | No Records Responsive |
| R002533-011523 | 01/15/23 | 946 S Clinton | No Records Responsive |
| R002533-011523 | 01/15/23 | 1000 S Grove | No Records Responsive |
| R002533-011523 | 01/15/23 | 1106 S Grove | granted |
| R002533-011523 | 01/15/23 | 1143 S Grove | No Records Responsive |
| R002533-011523 | 01/15/23 | 1156 S Wesley | No Records Responsive |
| R002533-011523 | 01/15/23 | 1120 Wesley | granted |
| R002533-011523 | 01/15/23 | 1122 Elmwood | No Records Responsive |
| R002533-011523 | 01/15/23 | 1153 Elmwood | No Records Responsive |
| R002533-011523 | 01/15/23 | 934 Gunderson | No Records Responsive |
| R002533-011523 | 01/15/23 | 1042 Ridgeland | No Records Responsive |
| R002533-011523 | 01/15/23 | 1026 Ridgeland | No Records Responsive |
| R002533-011523 | 01/15/23 | 1021 Ridgeland | No Records Responsive |
| R002533-011523 | 01/15/23 | 1018 Cuyler | No Records Responsive |
| R002533-011523 | 01/15/23 | 1159 Cuyler | No Records Responsive |
| R002533-011523 | 01/15/23 | 1182 Cuyler | No Records Responsive |
| R002531-011423 | 01/14/23 | 227 N Lombard | Granted |
| R002469-122622 | 12/26/22 | 1166 S Cuyler | No Records Responsive |
| R002871-040323 | 04/03/23 | 823 Gunderson | No Records Responsive |
| R002859-032923 | 03/29/23 | 1143 Taylor | No Records Responsive |
| R002858-032923 | 03/29/23 | 1141 Highland Ave | No Records Responsive |
| R002257-101922 | 10/19/22 | 524 N Cuyler Ave | No Records Responsive |
| R002257-101922 | 10/19/22 | 1140 East Ave | No Records Responsive |
| R002719-022423 | 02/24/23 | 1131 Elmwood | Granted |
| R002702-022123 | 02/21/23 | 1108 Elmwood | Granted |
| R003068-051723 | 05/17/23 | 1021 East Ave | Granted |
| R002943-042223 | 04/22/23 | 635 S Harvey | No Records Responsive |
| R002917-041623 | 04/16/23 | 1130 Harvey | No Records Responsive |
| R002910-041323 | 04/13/23 | 1156 Wesley | No Records Responsive |
| R002910-041323 | 04/13/23 | 1153 Wenonah | No Records Responsive |
| R002893-040823 | 04/08/23 | 534 S Harvey | No Records Responsive |

**Exhibit I**

| ISSUED DATE | PARCEL NO | CASE NO | JOB SITE | JOB DESCRIPTION |
|---|---|---|---|---|
| 01/10/2024 | 16053070280000 | PRRCA202303969 | 1118 N AUSTIN BLVD OAK PARK IL 60302 | Demo of drywall ,replace furnaces , paint, flooring, new kitchen cabinets |
| 01/25/2024 | 16071030020000 | PRDMI202400161 | 931 CHICAGO AVE OAK PARK IL 60302 | INTERIOR DEMOLITION-Start preparation and removals related to permit application PRCNA202304467. Remove addition bump outs, trim, and siding as required.<br><br>Project scope must match what was approved by the Historic Preservation |
| 01/28/2024 | 16173170220000 | PRRCA202304324 | 1109 HIGHLAND AVE OAK PARK IL 60304 | Basement remodeling including: interior demo, new partition walls, electrical work, plumbing work, new drywall, painting, new carpet and vinyl |
| 02/02/2024 | 16074050080000 | PRCNA202400204 | 401 SOUTH BLVD OAK PARK IL 60302 | Interior non-structural demolition. The building has multiple roof and parapet wall leaks. The work being done is Interior non-structural demolition to expose and evaluate the condition of the building's structure. Application for permit for construction alterations to follow. |
| 02/13/2024 | 16181130100000 | PRACS202304521 | 611 CLINTON AVE OAK PARK IL 60304 | Demo existing - Build new 24x22 detached frame garage w/ electric |
| 02/13/2024 | 16181130100000 | PRACS202304521 | 611 CLINTON AVE OAK PARK IL 60304 | Demo existing - Build new 24x22 detached frame garage w/ electric |

| Date | Parcel | Permit | Address | Description |
|---|---|---|---|---|
| 02/16/2024 | 16073250030000 | PRRCA202303588 | 412 CLINTON AVE OAK PARK IL 60302 | - DEMOLISH WINDOWS AND PARTIAL ROOF IN THE ATTIC. - CONSTRUCT NEW DORMER OVER EXISTING STAIRWAY IN ATTIC. - CONSTRUCT NEW PARTITION WALLS IN ATTIC SPACE. - INSTALL NEW WINDOWS IN ATTIC. - EXTEND HIGH VELOCITY AIR CONDITIONING TO ATTIC SPACE. - INSTALL NEW ELECTRICAL AND LIGHTING IN ATTIC SPACE. |
| 02/16/2024 | 16171260040000 | PRACS202304449 | 806 HIGHLAND AVE OAK PARK IL 60304 | Demo existing - Build new 22x22 detached frame garage w/ electric |
| 02/20/2024 | 16182100020000 | PRRCA202400078 | 604 WESLEY AVE OAK PARK IL 60304 | Remodel basement bathroom, demo basement ceiling and install new lighting, ***Adding a new water service with separate permit app. |
| 02/20/2024 | 16173170350000 | PRDMI202400237 | 1139 HIGHLAND AVE OAK PARK IL 60304 | INTERIOR DEMO- Remove existing wood framing (Previous owner removed roof/roof rafters, ceilings & all drywall) CC demo permit under other permit |
| 02/21/2024 | 16071120160000 | PRMFA202303848 | 211 N MARION ST OAK PARK IL 60302 | Kitchen Remodeling. Adding Washer/Dryer. Demolish non-structure walls. New non-structural walls |
| 02/23/2024 | 16053030230000 | PRMSC202400396 | 841 N LOMBARD AVE OAK PARK IL 60302 | Demo existing concrete driveway pad. There is no garage present just a parking pad. |

| | | | | |
|---|---|---|---|---|
| 02/23/2024 | 16073010190000 | PRDMI202400401 | 1111 SOUTH BLVD OAK PARK IL 60302 | INTERIOR DEMOLITION-We are removing 2 non structural walls in the kitchen. Half a bar in the dining room. Half a wall in the dining room and the wood decorative walls in the dining room. |
| 02/23/2024 | 16081210470000 | PRRCA202303914 | 131 N TAYLOR AVE OAK PARK IL 60302 | Install exterior wood siding, new windows, update porch, demo existing rear addition and build new 2-story rear addition, build new yard deck, new main level floor layout, new second floor primary ensuite, install dual-zone HVAC, install 200-amp electrical service. |
| 02/26/2024 | 16072040100000 | PRRCA202400393 | 400 N SCOVILLE AVE OAK PARK IL 60302 | Non-Structural demolition of existing finished attic only. No further work at this time |
| 02/28/2024 | 16182000170000 | PRRCA202400419 | 544 S OAK PARK AVE OAK PARK IL 60304 | Non structural Demo interior only ***ADDRESS WAS CHANGED FROM 408 S OP Ave to 544 S OP Ave. ***TPatterson on 2/28/24 Garage service door replace only (same size and height) repair holes Concrete attached is plat of survey highlighted areas Install windows new same size white single hung white ...***FENCE ON SEPARATE PERMIT.**** |

| 03/06/2024 | 16064110080000 | PRRCA202400481 | 710 FAIR OAKS AVE OAK PARK IL 60302 | Remodeling Basement Homeowner has already had drain tile system installed by another contractor. Plan is to demo existing flooring, drop ceiling, studs, and a small portion of concrete flooring (for plumbing drain). We will finish basement with new 2x6 studs 16 OC, drywall, R19 fiberglass insulation batt along exterior walls, plumbing for new bathroom, one bedroom (with a new operable casement window that meets egress clearance requirements), hard wired smoke alarm/CO monitors, new electrical (EMT conduit, 220v electric baseboard heaters), new LVP flooring, plumbing for relocated |

| 03/08/2024 | 16173060110000 | PRRCA202400531 | 928 LYMAN AVE OAK PARK IL 60304 | INTERIOR DEMOLITION /WATING FOR A FULL RESTORATION PERMIT TO BE APPROVE WE WOULD LIKE TO GET A PERMIT FOR THE INTERIOR DEMOLITION FOR THIS APLICATION - NON STRUCTURAL ONLY 1. A automatic fire sprinkler will be required under the following codes. AJ109.9 Automatic Fire Sprinkler Systems in existing one- and two- family dwellings and townhouses: AJ109.9.1 Additions. An automatic NFPA 13D residential fire sprinkler system shall be installed throughout existing one- and two- family dwellings and |
|---|---|---|---|---|
| 03/12/2024 | 16063070180000 | PRACS202301914 | 719 N MARION ST OAK PARK IL 60302 | demolish existing 1 car garage and replace with a new 2-car garage at the rear of the lot. |
| 03/12/2024 | 16173270380000 | PRCNA202400406 | 6212 ROOSEVELT RD OAK PARK IL 60304 | Demo of old chimney. |
| 03/15/2024 | 16184290010000 | PRACS202303578 | 1150 S ELMWOOD AVE OAK PARK IL 60304 | Demo 18'x18' old garage. Build/Frame new 22'x22' detached garage w/ new concrete slab, apron, service pad, and 10'x7' new concrete patio at party door. ***See comments. TPatterson on 3.14.24 |

| 03/19/2024 | 16063040060000 | PRRCA202400469 | 830 WOODBINE AVE OAK PARK IL 60302 | DEMO INTERIOR ,REMOVE ALL INTERIOR PLASTER AND DRYWALL-NON STRUCTURAL ONLY |
|---|---|---|---|---|
| 03/21/2024 | 16073190261013 | PRMFA202400670 | 842 WASHINGTON BLVD # G OAK PARK IL 60302 | Bathroom remodel which will include the demo of the existing drywall, the removal of the bath tub, sink and toilet, floor tiles, and wall tiles. New drywall (green board & durock), door, toilet, sink, tiles, shower fixtures to be installed. No tub installation to be converted to walk in shower. New exhaust fan install. There will be no changes to the buildings structural framing system. And Also, Back entry door replacement - existing door and frame to be removed and new door and frame to be installed. |
| 03/21/2024 | 16182300140000 | PRRCA202400632 | 846 GUNDERSON AVE OAK PARK IL 60304 | Demo and renovation of front porch. Being replaced is the porch itself, treads, risers, stringers, and joists. The wooden slats and the columns are being kept as is. This will be done with respect to both the neighborhood and to the historic design for the historic preservation committee. |

| | | | | |
|---|---|---|---|---|
| 03/21/2024 | 16182180330000 16182180331001 | PRMFA202400748 | 746 WESLEY AVE # 1N OAK PARK IL 60304; 746 WESLEY AVE OAK PARK IL 60304 | Demo of existing kitchen cabinets, stove & sink, installation of new cabinets in a similar layout. Installation of 2 new GFCI outlets and 1 new single pole switch for dishwasher shut off. Installation of new appliances, stove, dishwasher, sink & faucet. Relocate gas line from north wall to west wall for new stove. |
| 03/26/2024 | 16073050010000 | PRCNA202400597 | 100 S KENILWORTH AVE OAK PARK IL 60302 | Demolition of interior in existing laundromat including but not limited to walls, ceiling, electrical fixtures, plumbing, HVAC ducts and diffusers/ grilles, and flooring. |
| 03/28/2024 | 16171210300000 | PRRCA202400847 | 735 LYMAN AVE OAK PARK IL 60304 | Demo of wooden fence between backyard and alley & installing new 6' cedar fence. |

Exhibit J
## 840 Cuyler ticketed for Fence violation



## Similarly situated Properties Non cited Fence violations







